ATTORNEY FOR APPELLANT
Nicholas W. Haverstock
Burgher & Burgher
Corydon, Indiana

ATTORNEY FOR APPELLEE
Mary Beth Mock
Madison, Indiana



FILED
Mar 25 2009, 3:35 pm

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 13S05-0805-JV-213

IN RE THE MATTER OF THE PATERNITY
OF K.I., BY GRANDMOTHER AND NEXT
FRIEND J.I.,[1]

*Appellant-Respondent below,*

v.

J.H.,

*Appellee-Petitioner below.*

Appeal from the Crawford Circuit Court, No. 13C01-0403-JP-004
The Honorable Curtis Eskew, Special Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 13A05-0706-JV-329

**March 25, 2009**

**Rucker, Justice.**

---

[1] This is an amended opinion with a revised caption that now properly identifies the parties and affected persons in accordance with Indiana Administrative Rule 9(G)(4)(d), which became effective January 1, 2009. This amended opinion replaces a prior version issued earlier today, which inadvertently but incorrectly included the full names of the parents and grandmother of the minor child, contrary to the Rule. These persons had previously been publicly identified in the memorandum decision of the Court of Appeals issued prior to the effective date of the Rule.

The trial court modified the custody of a minor from the child's maternal grandmother to the child's natural father. The trial court also directed that grandmother be granted visitation consistent with the Indiana Parenting Time Guidelines. We conclude the trial court correctly modified custody but erred in directing the parties to rely on the Guidelines to determine visitation.

## Facts and Procedural History

On November 28, 2001, K.I. was born out-of-wedlock to E.H. who had briefly dated J.H.. At the time the parties' relationship ended J.H. was unaware that E.H. was pregnant. And the parties had not communicated with each other since the end of the relationship. Approximately six weeks after K.I.'s birth E.H. left the child in the custody of her mother, J.I. Thereafter, J.I. and her husband filed a petition seeking guardianship of K.I. which the trial court granted on September 17, 2002. Appellant's App. at 14-15.

Sometime in September or October of 2002 J.H. and E.H. had a chance encounter during which E.H. showed J.H. a picture of K.I. and told J.H. he may be the child's father. On March 12, 2004, acting as next friend of K.I., J.I. filed a petition to establish paternity. Appellee's App. at 3-4. Naming J.H. as the respondent, J.I. sought an order declaring J.H. the father of K.I., awarding custody of K.I. to J.I., and directing J.H. to pay child support and reimbursement of medical and hospital expenses. Id. at 4.[2]

Genetic testing conducted in June 2004 revealed a 99.89% probability that J.H. was the biological father of K.I. Consequently, after a hearing held on September 13, 2004, the trial court entered an order declaring J.H. K.I.'s biological father. The order also provided in pertinent part:

> That the Parties agree to establish parenting time among the parties, including the child's mother, as agreed upon.

---

[2] Although the petition is not in the record before us, apparently the State intervened in this action on March 23, 2004, and filed a Verified Petition to Establish Support. Crawford County CCS, Appellant's App. at 1.

2

> The Parties agree that custody of the minor child, [K.I.], is to remain with Petitioner, [J.I.], the maternal grandmother.
>
> Parties agree that the Court should enter an order for child support, medical and hospitalization expenses of the minor child. State moves the Court for a Hearing date to determine said obligations should the parties not reach an agreement.

Appellant's App. at 16-17.[3]

Over the next eighteen months or so J.H. exercised visitation with K.I. on a regular basis and the two spent a significant amount of time together. On August 29, 2006, the State on behalf of J.I. filed a motion to modify child support alleging a substantial and continuing change of circumstances rendering the prior support order no longer adequate. Appellant's App. at 20. On September 25, 2006, J.H. filed a Petition for Change of Custody alleging in part:

> The minor child, [K.I.], has been in the custody of the maternal grandparents since she was approximately six months of age. Respondent, [J.H.], was unaware that he had a child until the paternity petition was brought and had no relationship with the child. At the hearing on September 13, 2004 Respondent, [J.H.], felt the child should remain in the custody of [J.I.] until he had established a relationship with her.
>
> Since that time, [J.H.] has obtained a more secure employment and is in a better position to provide for himself and his minor child. Further, he has been exercising regular visitation with [K.I.] and she knows him as her father.

Appellant's App. at 25. After a hearing conducted on May 17, 2007, the trial court entered an order on June 15, 2007, awarding custody of K.I. to J.H. and granting J.I. visitation consistent with the Indiana Parenting Time Guidelines ("Guidelines"). The order included written findings of fact and conclusions of law. Appellant's App. at 7-13.

---

[3] Captioned as an "Agreed Entry," a child support and medical expense order was entered October 29, 2004. Among other things J.H. was ordered to pay $53.29 per week in child support, child support arrearage in the amount of $1,492.12 calculated from the date of the Petition to Establish Support, and payment of any medical expenses incurred by K.I. not otherwise covered by J.I.'s insurance. Appellant's App. at 18-19.

J.I. appealed contending: (1) the trial court abused its discretion by applying the wrong legal standard for custody modifications from the grandparent to the natural parent, and (2) the trial court abused its discretion in awarding custody of the minor child to the natural father. Appellant's Br. at 3. J.H. cross-appealed contending the trial court abused its discretion by granting J.I. visitation under the Guidelines as though she were a noncustodial parent. Appellee's Br. at 4. In an unpublished memorandum decision the Court of Appeals determined the legal framework the trial court used in awarding custody to J.H. was incorrect, reversed the trial court on this issue, and remanded the cause "for a determination of whether the parental presumption has been overcome and, if so, whether a modification is in the best interests of K.I. and whether there has been a change in one or more of the relevant statutory factors." In Re The Matter Of The Paternity Of K.I., No. 13A05-0706-JV-329, slip op. at 8 (Ind. Ct. App. Jan. 29, 2008). As for J.H.'s cross-appeal, the Court of Appeals concluded that if J.H. should be granted custody on remand, then the trial court should determine whether J.I. should be granted grandparent visitation under Indiana Code section 31-17-5-1 or de facto custodian visitation under Indiana Code section 31-9-2-35.5. Id. at 7-8. Having previously granted transfer, we now affirm in part the judgment of the trial court, and remand this cause for further proceedings.

**Standard of Review**

We review custody modifications for abuse of discretion with a "preference for granting latitude and deference to our trial judges in family law matters." Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002) (quoting In re Marriage of Richardson, 622 N.E.2d 178, 178 (Ind. 1993)). Also, as with all cases tried by the court without a jury, the trial judge in this case entered special findings and conclusions thereon pursuant to Indiana Trial Rule 52(A). In reviewing findings made pursuant to Rule 52, we first determine whether the evidence supports the findings and then whether findings support the judgment. Stonger v. Sorrell, 776 N.E.2d 353, 358 (Ind. 2002). On appeal we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. Fraley v. Minger, 829

4

N.E.2d 476, 482 (Ind. 2005). A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. Id.

## Discussion

### I.

The central issues in this case are: (1) what standard a trial court should apply when ruling on a parent's petition to modify custody of a child who is already in the custody of a third party, and (2) what role, if any, the presumption in favor of the natural parent plays in a modification proceeding. To begin, Indiana Code section 31-14-13-6 provides in pertinent part: "The court may not modify a child custody order unless: (1) modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter."[4]

---

[4] The section 2 factors are:

    (1)  The age and sex of the child.
    (2)  The wishes of the child's parents.
    (3)  The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
    (4)  The interaction and interrelationship of the child with:
        (A)  the child's parents;
        (B)  the child's siblings; and
        (C)  any other person who may significantly affect the child's best interest.
    (5)  The child's adjustment to home, school, and community.
    (6)  The mental and physical health of all individuals involved.
    (7)  Evidence of a pattern of domestic or family violence by either parent.
    (8)  Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

Ind. Code Ann. § 31-14-13-2 (West 2006).

The section 2.5 factors are:

    (1)  The wishes of the child's de facto custodian.
    (2)  The extent to which the child has been cared for, nurtured, and supported by the de facto custodian.
    (3)  The intent of the child's parent in placing the child with the de facto custodian.
    (4)  The circumstances under which the child was allowed to remain in the custody of the de facto custodian, including whether the child was placed with the de facto custodian to allow the parent seeking custody to:

The trial court's findings in support of modifying custody in J.H.'s favor provided in part: (1) after paternity was established [J.H.] consistently exercised parenting time with [K.I.] to the extent allowed by [J.I.] and as a result [K.I.] has had a chance to know her father and spend significant time with him; (2) [J.H.] did not feel that it would be in [K.I.'s] best interest to request that [K.I.] be placed in his custody before the two had an opportunity to bond and significantly develop their relationship, however at the present time [J.H.] and [K.I.] have bonded as father and daughter and have developed a close relationship. Appellant's App. at 9-10. Although not expressly stated, implicit in the trial court's findings is that modification of custody was in K.I.'s best interest. Noting a presumption that a natural parent should have custody of a child over a third party, the trial court determined that a third party seeking custody must show by clear and convincing evidence either (i) unfitness on the part of the parent, (ii) long acquiescence in the third party's custody of the child, or (iii) voluntary relinquishment of the child such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. Appellant's App. at 10. Ultimately, the trial court concluded J.I. did not carry her burden of overcoming the presumption in favor of J.H., K.I.'s natural parent.

This Court last addressed the circumstances under which custody of a child may be placed with a party other than a natural parent in In re Guardianship of B.H., 770 N.E.2d 283 (Ind. 2002). B.H. involved an initial custody determination between a father and a stepfather, shortly after the death of the children's mother, who had previously been awarded custody of the children. The stepfather sought and obtained an emergency order appointing him temporary guardian of the children immediately after the children's mother died. Id. at 285. Only weeks after the stepfather was appointed guardian, the children's father petitioned to terminate the guardianship and the stepfather cross-petitioned for permanent guardianship. Id.

---

      (A) seek employment;
      (B) work; or
      (C) attend school.

Ind. Code Ann. § 31-14-13-2.5 (West 2006).

In upholding the trial court's award of custody to the stepfather, this Court declared:

> [B]efore placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child. The presumption will not be overcome merely because "a third party could provide the better things in life for the child." In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important, but the trial court is not limited to these criteria. The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person.

Id. at 287 (citations omitted). As recounted above, the trial court cited the presumption that a natural parent should have custody of a child (the parental presumption). Then, citing Hendrickson v. Binkley, 161 Ind. App. 388, 316 N.E.2d 376 (1974), the trial court declared that to overcome the presumption, a third party seeking custody must show by clear and convincing evidence either (i) unfitness on the part of the parent, (ii) long acquiescence in the third party's custody of the child, or (iii) voluntary relinquishment of the child such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. Appellant's App. at 10. But in B.H., this Court clarified that in determining whether the parental presumption has been overcome, "the trial court is not limited to the three Hendrickson factors." B.H., 770 N.E.2d at 288.

Focusing on comments the trial court made after the hearing on the petition to modify,[5] and noting the trial court's reference to Hendrickson, J.I. contends, and the Court of Appeals

---

[5] Specifically, the trial court commented "the law is pretty clear . . . that when the father is fit, willing, able, . . . he is the one who is going to have custody." Tr. at 110. We agree this is an incorrect statement of the law. However, the trial court's comments were not incorporated into its findings and conclusions.

7

agreed, that the trial court applied an incorrect standard in modifying custody in J.H.'s favor. We make the following observations. First, the trial court may certainly rely on factors other than those set forth in <u>Hendrickson</u> in determining whether a third party has overcome the parental presumption. <u>See, e.g.</u>, <u>B.H.</u>, 770 N.E.2d at 288 (noting the trial court "relied on many factors" in determining that stepfather rather than father should be appointed guardian of the children including among others the estranged relationship between the father and the children; father's lack of any significant interaction with the children for a number of years; father's failure to stay current in paying child support; and father's history of excessive drinking). However, that is not to say reliance on the <u>Hendrickson</u> factors is error. Rather, such factors may provide guidance for trial courts in making custody determinations. Second, J.I. does not direct our attention to any evidence in the record demonstrating she carried her burden of overcoming the "important and strong presumption" that K.I.'s best interests are best served by placement with J.H., the child's natural parent. <u>B.H.</u>, 770 N.E.2d at 287. J.I. was required to do so by clear and convincing evidence proving that K.I.'s best interests are substantially and significantly served by placement with J.I. In essence it is presumed that it is in K.I.'s best interest to be placed in the custody of her natural parent. J.I. had the burden to overcome that presumption and she failed in that effort.

J.I. counters that the facts in this case should be controlled not by <u>B.H.</u>, but by <u>In re Paternity of Z.T.H.</u>, 839 N.E.2d 246 (Ind. Ct. App. 2005), <u>trans. not sought</u>. In that case a father petitioned to modify custody ten years after the child's maternal grandparents had been awarded custody pursuant to an agreement among the parties. The trial court granted the petition and awarded custody to the father. Grandparents appealed and the Court of Appeals reversed. Pointing out that <u>B.H.</u> involved an *initial* custody determination, and noting the "stringent standards" for custody modifications, the court concluded that where a parent requests to *modify* a third party's custody "a burden shifting approach is the most appropriate way to protect parental rights and the best interests of the child." <u>Z.T.H.</u>, 839 N.E.2d at 252.[6] We disapprove the conclusion of the <u>Z.T.H.</u> court on this point.

---

[6] More specifically the court declared:

> [W]e conclude that when a parent seeks to modify the long-term permanent custody of a third party, the third party must rebut the parental

We are of the view that the distinctions between the statutory factors required to obtain initial custody and those required for a subsequent custody modification are not significant enough to justify substantially different approaches in resolving custody disputes. Instead both require a determination of the child's best interest, and both require consideration of certain relevant factors. See Ind. Code Ann. § 31-14-13-2 (West 2008) (Factors for custody determination), Ind. Code Ann. § 31-14-13-6 (West 2008) (Modification of child custody order). And importantly, Indiana courts have long held that "[e]ven when a parent initiates an action to reobtain custody of a child that has been in the custody of another, the burden of proof does not shift to the parent . . . [r]ather, the burden of proof is always on the third party." In re Guardianship of J.K., 862 N.E.2d 686, 692 (Ind. Ct. App. 2007) (quoting In re Custody of McGuire, 487 N.E.2d 457, 460-61 (Ind. Ct. App. 1985)). A burden shifting regime that places "the third party and the parent on a level playing field," Z.T.H., 839 N.E.2d at 253, is inconsistent with this State's long-standing precedent. We acknowledge that in this case J.H. is not seeking to reobtain custody. He never had custody in the first place. But he is K.I.'s natural parent and the underlying rationale is the same.

It is of course true that a party seeking a change of custody must persuade the trial court that "(1) modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter." I.C. § 31-14-13-6; see also Heagy v. Kean, 864 N.E.2d 383, 388 (Ind. Ct. App. 2007) (holding that "[m]odification of child custody may occur only when a parent can demonstrate 'modification is in the best interests of the child, and there is a substantial change in one or more factors the court may consider.'"). But these are modest requirements

> presumption with "evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third party[.]" If the third party is able to rebut the parental presumption with clear and convincing evidence, the third party is essentially in the same position as any custodial parent objecting to the modification of custody. In other words, the third party and the parent are on a level playing field, and the parent seeking to modify custody must establish the statutory requirements for modification by showing modification is in the child's best interests and that there has been a substantial change in one or more of the enumerated factors.

Z.T.H., 839 N.E.2d at 252-53 (quoting B.H., 770 N.E.2d at 287).

9

where the party seeking to modify custody is the natural parent of a child who is in the custody of a third party. The parent comes to the table with a "strong presumption that a child's interests are best served by placement with the natural parent." B.H., 770 N.E.2d at 287. Hence the first statutory requirement is met from the outset. And because a substantial change in any one of the statutory factors will suffice, "the interaction and interrelationship of the child with . . . the child's parents," see Indiana Code Section 31-14-13-2(2) – one of grounds on which the trial court relied in this case – satisfies the second statutory requirement. In essence, although in a very technical sense, a natural parent seeking to modify custody has the burden of establishing the statutory requirements for modification by showing modification is in the child's best interest, and that there has been a substantial change in one or more of the enumerated factors, as a practical matter this is no burden at all. More precisely, the burden is minimal. Once this minimal burden is met, the third party must prove by clear and convincing evidence "that the child's best interests are substantially and significantly served by placement with another person." B.H., 770 N.E.2d at 287. If the third party carries this burden, then custody of the child remains in the third party. Otherwise, custody must be modified in favor of the child's natural parent. In this case, because J.I. failed to carry her burden, the trial court properly granted J.H.'s petition to modify custody in J.H.'s favor. On this point we affirm the judgment of the trial court.

## II.

In addition to modifying custody in J.H.'s favor, the trial court also ordered "that [J.I.] is to have visitation pursuant to the non-custodial parent's visitation provided under the Indiana Parenting Time Guidelines." Appellant's App. at 12. On cross-appeal J.H. argued the trial court abused its discretion in entering this order because it interferes with his parental rights and K.I.'s relationship with her parents. J.H. agrees that J.I. should have continuing contact with K.I. However, he contends that visitation should not be granted pursuant to the Guidelines. The Court of Appeals tacitly agreed and directed the court on remand to determine whether J.I. should be granted grandparent visitation under Indiana Code section 31-17-5-1 or de facto custodian visitation under Indiana Code section 31-9-2-35.5. In Re Matter Of The Paternity Of K.I., slip op. at 7-8.

10

We agree that J.I. is not entitled to visitation pursuant to the Indiana Parenting Time Guidelines. It is true that the Guidelines acknowledge a child's basic need "[t]o develop and maintain meaningful relationships with other significant adults (grandparents, stepparents and other relatives) as long as these relationships do not interfere with or replace the child's primary relationship with the parents." Ind. Parenting Time Guidelines, A Child's Basic Needs (8). However, as the Court of Appeals has observed, "The guideline's title – Indiana *Parenting* Time Guidelines – indicates that they apply to parents, not other family members. More to the point: 'The Indiana Parenting Time Guidelines are based on the premise that it is usually in a child's best interest to have frequent, meaningful and continuing contact with each *parent*.' Given this specificity and the repeated references to 'parents' throughout the guidelines, we suggest they have no mandatory application to grandparent visitation disputes." Woodruff v. Klein, 762 N.E.2d 223, 229 (Ind. Ct. App. 2002) (internal citations omitted) (emphasis supplied in original); see also Spaulding v. Williams, 793 N.E.2d. 252, 263-64 (Ind. Ct. App. 2003) (noting trial court error in entering a visitation order in favor of grandparents pursuant to the Guidelines that "erroneously treat Grandparents as if they were parents" and declaring, "[p]arenting Guidelines do not apply to grandparent visitation matters").

But we disagree with our colleagues that the de facto custodian statute provides J.I. any relief. More specifically, even assuming J.I. qualifies as a de facto custodian[7] that status bears only on the question of custody. See Indiana Code § 31-14-13-2.5(b)(2) (providing in relevant part "In addition to the factors listed in section 2 of this chapter, the court shall consider the following factors in determining *custody*: . . . The extent to which the child has been cared for, nurtured, and supported by the de facto custodian.") (emphasis added). The apparent intent of the de facto custodian statute is to clarify that a third party may have standing in certain custody proceedings, and that it may be in a child's best interests to be placed in that party's custody. In re Guardianship of L.L., 745 N.E.2d 222, 230 (Ind. Ct. App. 2001). The statute is silent on the question of visitation. In a modification proceeding, once the trial court determines that it is in

---

[7] Indiana Code section 31-9-2-35.5 provides in relevant part: "'De facto custodian' [ ] means a person who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least: (1) six (6) months if the child is less than three (3) years of age; or (2) one (1) year if the child is at least three (3) years of age."

11

the child's best interest that custody be granted to the natural parent, we must look elsewhere for guidance on whether and to what extent a third party may be granted visitation. That brings us to our next discussion.

Although grandparents do not have the legal rights or obligations of parents and do not possess a constitutional liberty interest with their grandchildren, nonetheless Indiana Code section 31-17-5-1, commonly referred to as the Grandparent Visitation Act, represents a Legislative recognition that "a child's best interest is often served by developing and maintaining contact with his or her grandparents." Swartz v. Swartz, 720 N.E.2d 1219, 1221 (Ind. Ct. App. 1999). Thus, in drafting the Act, the Legislature balanced two competing interests: "the rights of the parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren." Id. at 1222.

Under the Act, a grandparent may seek visitation only if (1) the child's parent is deceased; (2) the child's parents are divorced; or (3) the child was born out of wedlock, but only if the child's father has established paternity. I.C. § 31-17-5-1. And the trial court may grant visitation if it determines that "visitation rights are in the best interests of the child." I.C. § 31-17-5-2. When a trial court enters a decree granting or denying grandparent visitation, it is required to set forth findings of fact and conclusions of law. McCune v. Frey, 783 N.E.2d 752, 757 (Ind. Ct. App. 2003). In those findings and conclusions, the trial court must address: (1) the presumption that a fit parent acts in his or her child's best interests; (2) the special weight that must be given to a fit parent's decision to deny or limit visitation; (3) whether the grandparent has established that visitation is in the child's best interests; and (4) whether the parent has denied visitation or has simply limited visitation. In re Guardianship of J.E.M., 870 N.E.2d 517, 520 (Ind. Ct. App. 2007); In re Paternity of P.E.M., 818 N.E.2d 32, 37 (Ind. Ct. App. 2004). We also observe that although the amount of visitation is left to the sound discretion of the trial court, "[t]he Grandparent Visitation Act contemplates only 'occasional, temporary visitation' that does not substantially infringe on a parent's fundamental right 'to control the upbringing, education, and religious training of their children.'" Hoeing v. Williams, 880 N.E.2d 1217, 1221 (Ind. Ct. App. 2008) (quoting Swartz, 720 N.E.2d at 1221).

12

Although this case involves the visitation rights of a grandparent, it was not litigated under the Grandparent Visitation Act. Instead the trial court granted visitation in the context of a custody modification proceeding. And it did so directing visitation pursuant to the Indiana Parenting Time Guidelines. For the reasons previously discussed this was error. We therefore reverse the trial court on this point and remand this cause with instructions to enter appropriate findings and conclusions consistent with this opinion and the Grandparent Visitation Act.[8]

**Conclusion**

The judgment of the trial court is affirmed in part and reversed in part. This cause is remanded for further proceedings.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.

---

[8] We acknowledge there is authority for the proposition that the only circumstance under which a grandparent may seek visitation rights is by filing a proper petition under the Act. See In re Guardianship of K.T., 743 N.E.2d 348, 351 (Ind. Ct. App. 2001) (finding trial court error in granting grandparents visitation in conjunction with terminating a guardianship without the grandparents following the procedures of the Act); In re Guardianship of J.E.M., 870 N.E.2d 517, 519 (Ind. Ct. App. 2007) ("[W]e have consistently held that the [Grandparent Visitation Act] is the exclusive method for grandparents to seek visitation with their grandchildren. . . ."). However, the parties have already expended substantial time and resources litigating this matter. Therefore we conclude that for the sake of judicial economy the filing of a separate petition for grandparent visitation is unnecessary in this case.