RILEY, Judge,
dissenting.
I respectfully disagree with the majority’s decision to affirm the trial court’s Order, terminating the guardianship over the minor children and ordering an immediate return to their parents. In affirming the termination of the existing guardianship held by a third party, the majority relies on our supreme court’s legal framework instituted in K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453 (Ind.2009). Discussing K.I., the majority reaches the overarching and simplistic conclusion that “in a custody dispute between a parent and a third party, even where the parent seeks to re-obtain custody, the burden of proof is always on the third party.” Op. p. 691 (emphasis added).[3] I disagree with the majority’s reading of K.I.
*692 The statutory standard for terminating a guardianship is provided in Indiana Code section 29-3-12-l(c). Under this statute, a guardianship may be terminated whenever it is no longer necessary. Ind.Code § 29-3-12-l(c)(4). Indiana courts, however, “have generally applied a more detailed test than required by the plain language of the [guardianship] statute.” Froelich v. Clark, 745 N.E.2d 222, 227 (Ind.Ct.App.2001), trans. denied. Instead, a standard similar to the one used in child custody modifications, which takes into account parental rights and the best interests of the child, is applied. Id.
In K.I., our supreme court developed a two-part test to determine whether a guardianship of a minor child held by a third party should be terminated in favor of a natural parent. See K.I., 903 N.E.2d at 460. First, a parent wishing to terminate a guardianship has the burden to show that doing so is in the child’s best interest and there is a substantial change in one or more of the child custody factors.[4] See id. There is a “strong presumption that a child’s interests are best served by placement with the natural parent.” In re Guardianship of B.H., 770 N.E.2d 283, 287 (Ind.2002). That means that while the burden on the natural parent certainly exists, “these are modest requirements where the party seeking to modify custody is the natural parent of a child who is in the custody of a third party.” K.I., 903 N.E.2d at 460.
Once a natural parent overcomes this minimal burden, the burden shifts to the third party to show that the “best interests [of the child] are substantially and significantly served by placement with” the third party. B.H., 770 N.E.2d at 287. This prong can be satisfied by proving, with clear and convincing evidence, unfitness on the part of a parent, long acquiescence in the third party’s custody, or “voluntary relinquishment such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child.” Id. at 286 (quoting Hendrickson v. Binkley, 161 Ind.App. 388, 316 N.E.2d 376, 380 (1974), cert. denied 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98 (1975)). A trial court, however, is not limited to these three factors when determining whether the presumption in favor of the natural parent has been overcome. K.I., 903 N.E.2d at 459. If the third party fails to carry its burden, custody will be granted to the natural parent. Id. at 461.
In its analysis of the evidence, the trial court conflated both prongs of the test, squarely placing the evidentiary burden on the Guardians and merely applying the latter part — substantial and significant advantage. Because the trial court used an incorrect legal standard in terminating the minor children’s guardianship, I am convinced that employing the proper two- *693 prong test, as proponed by our supreme court in K.I., reaches a different result.
Although the natural parent comes to the table with a strong presumption in his favor and with only a low burden to overcome — a substantial change in any one of the statutory factors included in I.C. § 31-14-13-2 & -2.5 — here, Mother and Father failed to meet this minimal threshold. Initially, the grandparents accepted guardianship over the minor children because Mother and Father “were being evicted from a home that they were attempting to buy and needed somewhere for the children to go.” (Appellant’s App. p. 11). The evidence reflects that at the filing of the petition to terminate the guardianship, Mother and Father’s situation is still marred by instability and financial insecurity. During the five years that the minor children have resided with the Guardians, Mother and Father have moved residences eight times, with an additional ninth move scheduled for shortly after the trial court’s hearing. Of those eight moves, the homes were located in three different school districts. Mother and Father have been evicted from homes, have been without heat, resulting in heating the residence during winter by a free standing kerosene unit, and had the water cut off. They have relied on the generosity of their church to pay an electricity bill. When Mother and Father were without housing, they found refuge in the overcrowded home of their own parents. Since 2005, Mother had held nine different jobs, and Father has held approximately twelve various positions, interspersed with bouts of unemployment.
Although Mother testified that their income is sufficient to provide for both children and the petition to terminate the guardianship is not born out of a need to get AJ.B.’s SSI’s check to survive, the evidence submitted to the trial court reflects otherwise. In a letter addressed to the trial court, Mother details her monthly budget indicating that, after paying for her and Father’s basic needs, only $185 per month would be left over to take care of the minor children — one of which has special needs. This is directly contradicted by Mother’s own testimony at trial where she testified to a remaining monthly amount of $565.
In other words, Mother and Father cannot establish a change in their way of life — let alone a substantial change — that necessitated the guardianship in the first place. See I.C. § 31-14-13-2.5(4). Therefore, they have not carried their minimal burden to terminate the guardianship and to be granted custody over their minor children.
Even assuming arguendo, that Mother and Father were successful in satisfying their burden, I must nevertheless conclude that the Guardians proved by clear and convincing evidence that the children’s best interest is substantially and significantly served by their current placement.
L.R.T. has resided with her grandparents since she was three years old — she is currently seven — and A.J.B. has been out of his parents’ custody since he was eight months old-he is currently five. During this time, Mother visited with the children a total of four times, each time focusing her attention on L.R.T. while almost completely ignoring A.J.B. The trial court noted that the Guardians have a parent-child relationship -with both children. Especially with respect to A.J.B., the trial court found that he is at an emotional risk because of his Down’s Syndrome and needs structure and support to continue functioning well and to develop up to his maximum potential. Any change in routine may produce a risk of deterioration of his functioning. Although Mother testified that she had “looked into issues involving the special needs of [A.J.B.],” she clarified this *694 statement as meaning that she had spoken with her landlord whose daughter appears to be a special needs speech therapist. (Appellant’s App. p. 11). It is clear that Mother and Father do not have the ability or inclination to provide for A.J.B.’s extraordinary necessities. On the other hand, the Guardians cater to the children’s every need and accommodate A.J.B.’s therapy and very specialized care. They encourage both children to reach their best potential and nurture them every step of the way.
The long acquiescence of the children in their Guardians’ custody — to the point that the Guardians are the only parents A.J.B. remembers — has cultivated a strong bond, a deep mutual affection, and a safe and stable environment to mature. Uprooting the children without any notice and dropping them in the unstable and insecure lives of parents they barely know and an environment they are unfamiliar with, would seriously mar and endanger their future happiness and wellbeing. In fact, returning the minor children to Mother and Father’s care immediately after a long acquiescence in their grandparents custody, as decided by the trial court and affirmed by the majority, sentences them to a fate worse than a Child In Need of Services where a parent must initially adhere to a visitation schedule and a transition phase prior to full custody. Based on the evidence before me, I am convinced that the children’s best interest is substantially and significantly served by their current placement. The trial court’s decision to grant the petition to terminate guardianship was clearly erroneous and should be reversed.

. The majority also quotes to "[t]he [K.L] court specifically rejected a ‘burden-shifting *692 regime’ placing the third party and the parent on a level playing field, as this would be inconsistent with long-standing State precedent.” Op. pp. 690-91 (quoting K.I., 903 N.E.2d at 460). However, this quote alludes to our supreme court's interpretation of the party's argument that the K.I. facts should be controlled by the distinction between the statutory factors required to obtain initial custody and those required for a subsequent custody modification. See K.I., 903 N.E.2d at 460. In its analysis of this claim, our supreme court rejected the argument as not dispositive to the facts at hand. See id. As such, the supreme court did not "specifically reject a burden-shifting regime” within the legal framework of the specific evidence before it. See op. pp. 690-91. Rather, to the contrary, the K.I. court explicitly imposed one, albeit "minimal” and "technical.” See K.I., 903 N.E.2d at 460.

. These statutory factors are enumerated in Indiana Code sections 31-14-13-2 & -2.5.