**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**AARON M. FREEMAN**
**TYLER D. HELMOND**
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MARGARET LOIS JANSEN**
Indianapolis, Indiana

**I. MARSHALL PINKUS**
Pinkus Pinkus
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE: THE PATERNITY OF K.G.,   )
                                )
J.G.,                           )
                                )
    Appellant-Intervenor,   )
                                )
and,                            )
                                )
S.S.,                           ) No. 49A05-1206-JP-307
                                )
    Appellee-Petitioner,    )
                                )
and,                            )
                                )
A.S.,                           )
                                )
    Respondent Below.       )

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis Rosenberg, Judge
The Honorable Sheryl Lynch, Master Commissioner
Cause No. 49C01-0204-JP-929

## MEMORANDUM DECISION – NOT FOR PUBLICATION

**BARNES, Judge**

### Case Summary

J.G. ("Grandfather") appeals the trial court's order awarding S.S. ("Mother") custody of her daughter, K.G. We affirm.

### Issue

Grandfather raises one issue, which we restate as whether the trial court properly granted Mother's motion to modify custody.

### Facts

K.G. was born on March 22, 2002.[1] In September 2002, Mother was arrested for burglary. While she was incarcerated, Mother signed a document giving Grandfather custody of K.G. In October 2002, while Mother was still in jail, the trial court awarded Grandfather physical custody of K.G., and Mother was ordered to pay child support and was awarded visitation.

Although the burglary charges against Mother were eventually dismissed and she was released from jail in November 2002, Mother's involvement with K.G. was sporadic and, in 2004 and 2005, she was convicted of additional alcohol and property-related offenses resulting in intermittent incarceration. Mother was last incarcerated in October 2007.

---

[1] K.G.'s father did not participate in the custody modification proceedings and consented to Mother obtaining custody of K.G.

In 2005, Mother began asking Grandfather for custody of K.G., and Grandfather denied the requests. In June 2010, Mother filed a petition to modify custody. Until that point, Grandfather had cared for, nurtured, and financially and emotionally supported K.G. After Mother filed her motion, she began having regular visitation with K.G. At the time of the Spring 2012 hearing, Mother had matured, was married, had purchased a home with her husband, and had had another child with her husband. Following the hearing, the trial court granted Mother's motion to modify custody, awarding Mother custody of K.G. and granting Grandfather visitation with K.G. Grandfather now appeals.

**Analysis**

Grandfather argues that the trial court abused its discretion when it modified custody. It is well-settled that custody modifications are reviewed for abuse of discretion with a preference for granting latitude and deference to our trial courts in family law matters. Id. More specifically, our supreme court has made clear:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011).

Here, the trial court entered special findings and conclusions thereon pursuant to Indiana Trial Rule 52(A). "In reviewing findings made pursuant to Rule 52, we first determine whether the evidence supports the findings and then whether findings support

3

the judgment." <u>K.I. ex rel. J.I. v. J.H.</u>, 903 N.E.2d 453, 457 (Ind. 2009). "On appeal we 'shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" <u>Id.</u> (quoting Ind. Trial Rule 52(A)). "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment." <u>Id.</u> "A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts." <u>Id.</u>

In <u>K.I.</u>, our supreme court set out the legal standard for a parent seeking to modify custody from a third party. The court explained that, as an initial matter, "a party seeking a change of custody must persuade the trial court that '(1) modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter.'" <u>Id.</u> at 460 (quoting Ind. Code § 31-14-13-6). According to <u>K.I.</u>, the best interests requirement is met from the outset because the parent comes to the table with a strong presumption that a child's interests are best served by placement with the natural parent. <u>Id.</u> As for the substantial change in one or more of the statutory factors, a trial court may consider the interaction or interrelationship of the child with the child's parent. <u>See</u> I.C. § 31-14-13-2(4)(A). Thus, although in a technical sense a parent seeking to modify custody has the burden of establishing the statutory requirements for modification, "as a practical matter this is no burden at all. More precisely, the burden is minimal." <u>Id.</u> Grandfather agrees that Mother met this burden.

"Once this minimal burden is met, the third party must prove by clear and convincing evidence 'that the child's best interests are substantially and significantly served by placement with another person.'" Id. at 460-61 (quoting In re Guardianship of B.H., 770 N.E.2d at 283, 287 (Ind. 2002)). "If the third party carries this burden, then custody of the child remains in the third party. Otherwise, custody must be modified in favor of the child's natural parent." Id. at 461.

Grandfather argues that the trial court wrongly held that K.G.'s best interests were not substantially and significantly served by continued placement in his custody. In attacking the trial court's fifteen-page order, Grandfather argues that some of the trial court's findings were not supported by the evidence and that the trial court ignored evidence that K.G.'s best interests were substantially and significantly served by continuing to live with him.

### *I. Evidence Supporting the Findings*

Grandfather asserts that the evidence does not support the trial court's findings that Mother's intent in placing K.G. with Grandfather was temporary due to her incarceration, that Grandfather resisted giving Mother custody without court intervention,[2] that Mother was intimidated by Grandfather, and that Mother did not

---

[2] In many of his arguments, Grandfather takes a rather myopic view of the findings. When read as whole, the trial court's findings paint a much more favorable picture of Grandfather than Grandfather's brief suggests. For example, Grandfather argues, "the trial court's characterization of grandfather's 'refusal' to return the child to the mother's custody without court intervention is curious and equally unsupportable." Appellant's Br. p. 10. However, in Finding 7, the trial court stated, "Mother was not financially able to get an attorney to go to Court to get custody of her child until 2010, given [Grandfather's] resistance to just give Mother custody of her child without Court intervention." App. p. 21. Further, in Finding 31, the trial court stated, "[Grandfather] as the De Facto custodian of the child

acquiesce to Grandfather's continued custody over all these years. To the contrary, Mother's testimony supports all of these findings. See, e.g., Tr. pp. 46-50, 52, 73, 97, 236. To the extent Grandfather directs us to other evidence, he is asking us to reweigh the evidence and assess witness credibility, which we cannot do. It was within the trial court's discretion to determine that, although Mother initially acquiesced to Grandfather obtaining custody of K.G., she did not acquiesce during the entire time K.G. was in Grandfather's custody.

Grandfather next asserts that certain findings about Mother were not supported by the evidence, namely that her legal problems were over, that her interaction and interrelationship with K.G. were good, and that K.G. would have adequate living arrangements with Mother. At the hearing, however, Mother was more than candid about her criminal history and testified that she was last incarcerated in 2007 and has had no further criminal history. See Tr. p. 72. There was evidence that Mother is a "great mom" and that she is "nurturing" and "patient" with K.G. Id. pp. 297, 328. Even Grandfather agreed that K.G. loved Mother. See id. at 468. Finally, there was testimony and photographic evidence about Mother's house, and Mother's employment and household income were discussed during the hearing.

Although Grandfather directs us to evidence of Mother's shortcomings, the trial court was aware of this evidence and even acknowledged some of it in its order. Grandfather has not established that the evidence does not support these findings.

---

was entitled to not voluntarily give the child back to Mother without Court intervention. The Court does not hold that against [Grandfather]." Id. at 25.

6

Finally Grandfather challenges certain findings related to his testimony about appropriate visitation, his and his wife's ages and physical conditions, his knowledge of K.G.'s friends' names, and the hostility between Grandfather and Mother. Grandfather's arguments regarding his meaning when he used the word "appropriate" to describe visitation and his wife's testimony about wanting to be grandparent to K.G. are based on what he characterizes as "the trial court's complete disregard for context." Appellant's Br. p. 15. The hearing was conducted over the course of three days, and during that time the trial court had the opportunity to observe the witnesses, assess their demeanor, and gauge their credibility through both factual testimony and intuitive discernment. See Best, 941 N.E.2d at 502. Thus, it was within the trial court's discretion to determine the context in which the various statements were made and weigh them accordingly.

Grandfather takes issue with the trial court's concern for his health and ability to meet the needs of K.G going forward and claims that these findings were not supported by the evidence. To the contrary, Grandfather testified that K.G. is "very active," that she has been diagnosed with ADHD, and that, contrary to the recommendations of a psychological evaluation, he did not enroll her in any extracurricular activities other than bowling with him. Tr. p. 468. Further, the trial court viewed Grandfather's demeanor in court and was able to assess his physical ability to keep up with an active ten-year-old and compare it to Mother's ability. Grandfather has not shown that there is no evidence to support these findings.

7

In his arguments regarding knowing the names of K.G.'s friends and allowing her to attend sleepovers, Grandfather asks us to credit certain testimony over other testimony, which we cannot do. This argument is unavailing.

Regarding the hostility between Mother and Grandfather, Grandfather claims there is no evidence that K.G. did not want to upset Mother and Grandfather. To the contrary, Mother testified that K.G. does not want to upset either one of them, that she is torn, that she hears bad things, and that it makes her upset. See Tr. p. 130. The evidence supports this finding.

Grandfather also asserts that he did not primarily cause the hostility and that the evidence does not support the trial court's concern that the continued hostility will damage the relationship with Mother and K.G. if Grandfather continues to have custody. Contrary to Grandfather's assertion, the record supports this finding. Throughout the record, there is evidence of Grandfather's reluctance to allow visitation and his inflexibility regarding visitation. There is also evidence that Grandfather has made comments to K.G. regarding Mother that Grandfather admitted were not appropriate and that he has belittled Mother in front of K.G. See Tr. pp. 478, 479, 496. This evidence supports the trial court's finding that continued custody with Grandfather would negatively impact the relationship between Mother and K.G.

## II. Best Interests

Grandfather also asserts that resounding evidence showed that K.G.'s best interests were substantially and significantly served by continued placement with him. In making this argument, Grandfather again focuses on evidence most favorable to his

8

position, including a January 2011 custody evaluation. Based on a complete reading of the trial court's order, however, it is clear that the trial court carefully considered the evidence, including the custody evaluation, and applied the correct legal standards when it concluded that modification of custody was in K.G.'s best interests. We may not second guess the trial court's decision because "our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." Best, 941 N.E.2d at 502.

## Conclusion

Grandfather has not established that the trial court's findings are not supported by the evidence or that the trial court clearly erred when it concluded it was not convinced that placement with Grandfather represented a substantial and significant advantage to K.G. We affirm.

Affirmed.

BAKER, J., and RILEY, J., concur.