# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 19 2018, 8:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Philip R. Skodinski
South Bend, Indiana

ATTORNEY FOR APPELLEES

Mark F. James
Anderson Agostino & Keller, PC
South Bend, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Adoption of A.R., S.R., C.R., and M.R. | April 19, 2018 |
| | Court of Appeals Case No. 71A03-1710-AD-2359 |
| | Appeal from the St. Joseph Probate Court |
| | The Honorable James N. Fox, Judge |
| | Trial Court Cause No. 71J01-1410-AD-93 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Respondents, C.R. (Father) and A.H. (Mother) (collectively, Parents), appeal the trial court's Order Approving Adoption in favor of Appellees-Petitioners, T.H. and C.H. (Adoptive Mother) (collectively, Adoptive Parents).

We affirm.

# ISSUE

Parents raise one issue on appeal, which we restate as: Whether the trial court erred by granting Adoptive Parents' petition to adopt Parents' four minor children following a determination that parental consent to the adoption was not required.

# STATEMENT OF FACTS

Father and Mother are the biological parents of four children: A.R., born September 19, 2004; S.R., born February 15, 2008; C.R., born October 18, 2009; and M.R., born December 5, 2012 (collectively, the Children). Parents have never been married. Father never legally established his paternity to S.R. and C.R.

Beginning in approximately October of 2012, a number of concerns were raised with respect to the health and well-being of the Children while in Parents' care. In particular, the St. Joseph County Health Department became involved when it was discovered that Parents' South Bend, Indiana, home contained

dangerous levels of lead. Parents' efforts to remediate the problem were unsuccessful, and the Health Department deemed the dwelling to be "unfit for habitation for children under seven." (Appellees' Exh. 1, p. 5). They eventually moved in with other family members until they could afford to finish remediation. Concerns had also been reported regarding Parents' inability to maintain working utilities in the home. Furthermore, the Department of Child Services intervened with the family and offered counseling services after it was discovered that Parents' oldest child, A.R., had been molested by a maternal grandfather with a known history of molestation. Parents did not follow through with counseling recommendations. Similarly, S.R.'s teacher notified Parents about a display of sexualized behaviors, but Parents did not follow up with the teacher. Parents had also reportedly allowed another relative to stay in their home, and this relative had physically abused the Children. In addition, the Children had medical, mental/emotional, and dental conditions that were not being properly treated.

[6] Accordingly, because of the "long history of abuse and neglect," on January 22, 2015, Adoptive Parents obtained a temporary guardianship over the Children. (Appellees' Exh. 1, p. 1). Adoptive Mother is Mother's maternal aunt and, as such, is biologically related to the Children. The trial court ordered Parents and Adoptive Parents to submit to urine screens and directed Adoptive Parents to permit Parents "to visit with the [C]hildren and keep them informed of all medical appointments for the [C]hildren and results thereof as well as their

progress in school or any other activities of the [C]hildren." (Appellees' App. Vol. II, p. 5).

[7] After obtaining the guardianship, Adoptive Parents enrolled the Children in counseling and ensured that the Children received treatment for their varying medical conditions. Initially, Parents regularly visited with all four Children; however, Adoptive Parents and the Children's counselors noted that the Children were experiencing negative reactions surrounding the visits. On March 12, 2015, the trial court denied Adoptive Parents' petition to suspend Parents' visitation and ordered that "supervised visitation take place at Families First or Lifeline for a period of two (2) hours per week as set up and paid for by the [P]arents." (Appellees' App. Vol. II, p. 6). The trial court directed Parents to "submit to a psychological evaluation as agreed upon" and to "submit to drug testing within [forty-eight hours] at the South Bend Medical Foundation." (Appellees' App. Vol. II, p. 6). At some point, supervised visits were discontinued at the advice of the Children's counselors. Phone calls were permitted, but whenever Parents attempted to call, Adoptive Parents would inform Parents that the Children had no desire to talk. Adoptive Parents indicated that they were following the advice of the counselors by giving the Children the option of whether to speak to Parents. Parents have not seen the Children since March of 2015.

[8] In July of 2015, Dr. Anthony Berardi (Dr. Berardi) completed a report, detailing the results of Parents' psychological parenting evaluations. Dr. Berardi concluded that Mother needed to comply with random drug screens,

participate in individual psychotherapy, attend supervised visits, work with doctors and therapists in furtherance of the Children's treatment, and participate in family therapy. As to Father, Dr. Berardi recommended that he complete a formal substance abuse assessment, participate in intensive outpatient treatment, attend individual and family therapy, and engage in supervised visitation with the Children. Dr. Berardi "strongly believe[d] that the [P]arents need to follow the steps outlined in his recommendations before any sort of reunification process should even be considered." (Appellees' Exh. 1, p. 6). With the exception of attempting to participate in visits, Parents admittedly did not follow through with any of Dr. Berardi's recommendations based on the fact that they were not specifically court-ordered.

[9] On August 14, 2015, the trial court appointed Adoptive Parents as permanent guardians for the Children. On August 17, 2015, Adoptive Parents filed a petition seeking child support from Parents. However, because the Chronological Case Summary (CCS) for events occurring prior to the filing of an adoption petition has not been submitted to this court, there is no indication as to whether the trial court ordered Parents to pay child support other than the testimony of Adoptive Mother that "[s]upport was established through the court." (Tr. Vol. II, p. 48). While there is no dispute that Parents never provided any monetary support on behalf of the Children, Parents claimed to have provided clothing and school supplies to the Children's maternal grandmother, who maintained regular contact with the Children, to deliver to Adoptive Parents for the Children. Parents further indicated that Adoptive

Parents refused to accept any items/gifts for the Children. In turn, Adoptive Parents stated that they never received anything from Parents, directly or indirectly, for the Children.

[10] On March 31, 2016, Adoptive Parents filed a Petition for Adoption of the four Children. In their petition, Adoptive Parents argued that parental consent to the adoption was not required because Parents had failed to provide support and failed to communicate significantly with the Children for at least one year. Adoptive Parents stated that they are "able to care for, support[,] and educate the [Children]." (Appellants' App. Vol. II, p. 6). On May 10, 2016, Parents filed a Response to Petition for Adoption, in which they alleged that Adoptive Parents had thwarted their efforts to visit and speak with the Children. Parents further charged that Adoptive Parents were abusive to the Children, and it would therefore be contrary to the Children's best interests to continue residing with Adoptive Parents.

[11] On June 5, 2017, the trial court held a hearing on the adoption petition. On September 8, 2017, the trial court issued an Order Approving Adoption. In pertinent part, the trial court determined that neither Father nor Mother had paid child support for the Children for a period of over one year despite an ability to do so; therefore, the adoption could proceed without parental consent. The trial court found that the evidence established that it would serve the best interests of the Children to be adopted by Adoptive Parents. The CCS does not indicate when the trial court issued a final decree of adoption.

Parents now appeal. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Standard of Review*

When reviewing a trial court's ruling in an adoption case, "we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). In fact, in matters of family law, the trial court is generally entitled to "considerable deference" owing to the recognition that the trial court "is in the best position to judge the facts, determine witness credibility, 'get a feel for the family dynamics,' and 'get a sense of the parents and their relationship with their children.'" *Id.* at 973 (quoting *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005)). Our court will not disturb the ruling of the trial court "unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion." *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, and we consider the evidence most favorable to the trial court's decision. *Id.* Furthermore, the trial court's findings and judgment will only be set aside if they are clearly erroneous. *Id.* "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment." *Id.* (quoting *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009)).

[14] Parents challenge the trial court's Order Approving Adoption based on the absence of parental consent. A petition for adoption of a minor child may only be granted if written consent has been executed by, in relevant part, "[t]he mother of a child born out of wedlock and the father of a child whose paternity has been established by" either a court proceeding or paternity affidavit. Ind. Code § 31-19-9-1(a)(2).[1] However, Indiana's adoption statute includes certain exceptions, pursuant to which an adoption may proceed without parental consent. Specifically, as relevant in the present case, consent is not required by:

> A parent of a child in the custody of another person if for a period of at least one (1) year, the parent:
> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

I.C. § 31-19-9-8(a)(2).

[15] Adoptive Parents bore the burden of establishing by clear and convincing evidence that Parents' consent was not required. *Id.*[2] In their petition for adoption, Adoptive Parents alleged that consent was not required because of

---

[1] Thus, Father's consent to the adoption of S.R. and C.R. was not required based on the fact that he never established his paternity.

[2] Parents indicate that Adoptive Parents had to prove that consent was not required "by clear, cogent and indubitable evidence"; however, this standard has been abrogated. (Appellants' Br., p. 10); *see In re Adoption of S.W.*, 979 N.E.2d 633, 640 (Ind. Ct. App. 2012). In addition to citing an outdated standard, Parents have also improperly cited to at least one unpublished decision. *See* Ind. Appellate Rule 65(D).

Parents' failure to communicate significantly *and* to provide support for a period of at least one year. The trial court dispensed with parental consent based solely on Parents' failure to provide support despite an ability to do so. "[I]t is well-settled that parents have a common law duty to support their children" even in the absence of a court order mandating child support. *In re Adoption of M.B.*, 944 N.E.2d 73, 77 (Ind. Ct. App. 2011). "A parent's nonmonetary contribution to a child's care may be counted as support." *Id.*

[16] Here, Parents concede that they clearly "had the financial ability to support the [C]hildren." (Appellants' Br. p. 11). Thus, they insist that "[t]he problem is that their effmis [*sic*] to do so were thwarted by [Adoptive Parents]." (Appellants' Br. p. 11). Parents specify that

> not only did [Adoptive Parents] not ask for suppmi [*sic*] but they refused any help. The efforts of [Parents] to support the [C]hildren were thwmied [*sic*], forcing them to provide support through a third party, the [maternal] grandmother. They supplied clothes and school supplies through her. They bought the [C]hildren Christmas presents but were told not to deliver them. The grandmother was reluctant to testify for fear of being denied contact with the [C]hildren.

(Appellants' Br. p. 11) (internal citations omitted). We find that Parents' argument is purely a request that we reweigh evidence, which we will not do.

[17] The trial court heard the evidence presented by Parents that their efforts to directly provide materials, specifically clothing and school supplies, for the Children were rebuffed by Adoptive Parents. As to why no documentation was

admitted regarding their purported efforts to support the Children, Mother testified that she had "a whole box of receipts" at her home, and Father stated that he had attached all of his receipts to the items he purchased "because it was clothing and sizes do change." (Tr. Vol. II, pp. 24, 31). Although Parents did not specify as to how frequently they purchased items for the Children, they maintained that everything was provided to the Children using the maternal grandmother as an intermediary. The only indication that the maternal grandmother was reluctant to testify was based on Mother's assertion that she did not ask the maternal grandmother to testify because "[i]f [the maternal grandmother] doesn't do what [Adoptive Parents] say, she doesn't get to see the [Children]." (Tr. Vol. II, p. 65).

[18] On the other hand, the trial court's file included an August 2015 filing by Adoptive Parents seeking an order for child support from Parents. Furthermore, Adoptive Parents testified that they never received any support—monetary or otherwise—from Parents during the entirety of the guardianship. Adoptive Mother specified that "[n]othing was received from" the maternal grandmother (*i.e.*, Adoptive Mother's half-sister) for the Children. (Tr. Vol. II, p. 42). Because it was the trial court's prerogative to find the evidence presented by Adoptive Parents to be more credible and weigh it accordingly, we

affirm its determination that Parents' consent to the adoption was not required based on their failure to provide support for the Children for at least one year.[3]

# CONCLUSION

Based on the foregoing, we conclude that Parents' consent to the adoption of the Children by Adoptive Parents was not required based on a failure to provide support, despite an ability to do so, for a period of at least one year.

Affirmed.

May, J. and Mathias, J. concur

---

[3] At the end of their brief, Parents also vaguely challenge several of the trial court's findings as being unsupported by the evidence, including: Parents' ability to appreciate the severity of the Children's medical issues; the legitimacy of a letter written by A.R., detailing the abuse in Parents' home; and the efforts made by Parents to reunify with the Children. These findings are not relevant to the issue of parental consent to the adoption. Nevertheless, even where consent is not required, the trial court may only grant a petition for adoption if the adoption is in the best interests of the child and if the prospective adoptive parents "are of sufficient ability to rear the child and furnish suitable support and education," among other factors. I.C. § 31-19-11-1(a)(1)-(2). To the extent that Parents now challenge the validity of these other findings as failing to support the trial court's determination that adoption is in the Children's best interests, we find any such argument to be waived pursuant to Indiana Appellate Rule 46(A)(8)(a).