# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**DANIEL J. MOORE**
Laszynski & Moore
Lafayette, Indiana

ATTORNEY FOR APPELLEE:

**PAMELA J. HERMES**
Gambs, Mucker, & Bauman
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE PATERNITY OF C.J.A.:

| | |
|---|---|
| G. C. (Mother), ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | No. 79A02-1302-JP-137 |
| ) | |
| T.A. (Father), ) | |
| ) | |
| Appellee. ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1002-JP-4

**January 27, 2014**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

T.A.'s ("Father") paternity to C.A. was established in the Tippecanoe Circuit Court. Father and G.C. ("Mother") agreed to custody and parenting time, and the trial court adopted their agreement in an order titled "Amended Second Provisional Order." However, approximately two years after the entry of that order, Father challenged Mother's custody of their child, C.A. while she continued to reside in South Carolina.

After a hearing, the trial court issued an order awarding Mother primary physical custody of C.A., but only if she returned to Indiana. In the event she failed to establish her residence in Indiana, Father would automatically have primary physical custody of C.A. Mother appeals and raises several issues, which we consolidate and restate as:

I. Whether the trial court has authority to issue provisional orders in paternity proceedings;

II. Whether the "Amended Second Provisional Order" was a provisional or final custody order; and,

III. Whether the trial court erred when it prospectively ordered an automatic change of custody in the event Mother failed to establish her residence in Indiana.

We reverse and remand for proceedings consistent with this opinion.

**Facts and Procedural History**

Mother was born and resided in South Carolina until her family relocated to West Lafayette in 2006, after her father accepted a position at Purdue University. Mother and Father met in high school and became involved in a romantic relationship. During their relationship, Mother became pregnant. Father was actively involved in Mother's prenatal care and the birth of their child, C.A., who was born on December 12, 2008. Father established his paternity to C.A. by affidavit one day after his birth.

2

Father was involved in caring for C.A. and exercised parenting time with him. Initially, his parenting time occurred at Mother's parents' home, but eventually, Father was able to exercise parenting time at his own home. After Mother graduated from high school, she enrolled at Ivy Tech and took classes part-time. While Mother was in class, Father cared for C.A. at his workplace, which is a trucking business owned by Father's uncle.

The parties successfully co-parented C.A. until Mother decided that she wanted to return to South Carolina to finish her college courses. When Father objected to Mother's relocation, she began to restrict his parenting time. Therefore, on February 2, 2010, Father petitioned the trial court to enter an order on custody, child support, and parenting time. The parties agreed to mediate the issues raised in Father's petition, and on April 12, 2010, the trial court issued a "Provisional Order" approving the parties mediated agreement concerning parenting time and child support.

Shortly thereafter, Mother again expressed her desire to relocate to South Carolina and finish her college degree. Consequently, this case was set for trial in July 2010. But on some date before the scheduled trial date, the parties reconciled. Therefore, at the parties' request, the trial date was vacated and an "Amended Second Provisional Order" was entered, which provided in pertinent part:

> 3. The parties have reconciled and have agreed to move together to South Carolina on or after August 1, 2010, with their son, where they will be sharing physical custody of and the expenses for their child and the Mother will be attending school. In light of the parties' reconciliation, no Notice of Intent to Move shall be required.
>
> 4. The parties shall share joint legal custody of [C.A.] and shall share physical possession of [C.A.] while their reconciliation continues. In the

3

event that the parties['] reconciliation fails and they no longer agree to a shared physical custody parenting arrangement, then pending further court order, Mother shall have primary physical possession of [C.A.] and Father shall have the right to liberal parenting time with [C.A.], which shall at a minimum be at least in accordance with the age appropriate parenting time under the Guidelines, including overnights for regular parenting, shall include over nights for multi-day holiday parenting time as provided in the parties' mediation agreement, and shall be subject to the general provisions of the Guidelines, including with regard to the right to additional parenting time if there is a need for a care provider.

***

6. The parties acknowledge and agree that the Court has continuing jurisdiction over the issues of child custody, support and parenting time, and that a future separation shall constitute a material change in circumstances.

Appellant's App. pp. 18-19.

Mother and C.A. moved to South Carolina in August 2010, and Father moved shortly thereafter. Mother and Father's relationship was tumultuous, and Father lived in Indiana and South Carolina throughout the fall of 2010. In November 2010, the parties determined that they no longer desired to reconcile. They agreed that Father would pay $300 per month in child support to Mother, which Father later voluntarily increased to $500 per month due to an increase in his income. They also agreed that C.A. would spend approximately one week per month with Father in Indiana. Father generally bore the entire burden for C.A.'s transportation between Indiana and South Carolina and the associated travel expenses. Mother indicated that she was not willing to assist with C.A.'s transportation for parenting time with Father.

Mother started school in South Carolina intending to complete a one-year program, but changed her plans and enrolled in a two-year physical therapy assistant ("PTA") program. Mother completed that program and graduated on October 17, 2012. She also

4

obtained a PTA license in South Carolina. After Mother notified Father that she did not plan to return to Indiana, a hearing date was set for November 29, 2012.

At the hearing, Mother testified that she had obtained employment in South Carolina that would pay approximately $1000 per week. Father earns a similar income working for his uncle's trucking business. Father's uncle allows Father flexibility in his working hours to accommodate Father's parenting time with C.A. Father's uncle, aunt, and cousins spend a significant amount of time with C.A. and live in the West Lafayette area. Mother's parents also still live in the West Lafayette area, but Mother's mother spends a significant amount of time in South Carolina. Her parents might return to South Carolina after Mother's father retires from Purdue University.

Father also hired an expert, Theresa Slayton, to perform a parenting assessment of Father and C.A. Ms. Slayton observed that Father and C.A. have a close bond, and Father provides a loving, nurturing environment for C.A. Ms. Slayton testified that Father understands and is capable of meeting C.A.'s emotional and developmental needs. Further, Ms. Slayton gave her opinion of the negative impact to the child when the child is separated from the non-custodial parent by a long distance.

On January 7, 2012, the trial court issued the following pertinent findings and conclusions:

> 23. Until several months after the [August 2010] move [to South Carolina], Father understood Mother was pursuing her LPN degree and would finish in a year, but Mother had applied for and ultimately enrolled in the physical therapy assistant ("PTA") program, which delayed her graduation by more than a year.
> 24. The parties were able to make arrangements until March of 2012, when Father was unable to get parenting time. Father proposed a schedule for the

5

remainder of the year, but Mother would only schedule a month at a time. There have been problems since March and the case was scheduled for trial in contemplation of Mother's expected graduation.

25. Mother graduated in October of 2012 and obtained a South Carolina PTA license. She applied for jobs, mostly in South Carolina, but considered relocation from Florence, including to North Carolina. She did not apply or look for work in Indiana. Mother was able to complete her degree without taking out loans due to the assistance she received from her parents, money from an inheritance, and funds obtained from Pell Grants.

\*\*\*

27. It is feasible for Mother to return to Indiana. She is qualified to seek licensure here. Mother testified licensure could be completed in 3 months. Mother also testified that if the Court did not allow permanent relocation, she would return to Indiana and get a job here.

28. Mother's mother may be moving to Florence and living with the Mother.

29. Since shortly after [C.A.'s] birth, Father has worked at AMT Trucking, except for the time in 2010 when reconciliation efforts were ongoing. AMT is a family business owned by Father's uncle ("Uncle"). Father's father died when he was two and Uncle has been a father figure for Father since then. Father is considered part of Uncle's family, as is [C.A.]. Uncle supported Father's reconciliation with Mother, but said he would rehire Father if things did not work out.

\*\*\*

31. It is far less feasible for Father to relocate to South Carolina than it is for the Mother to return to Indiana.

32. The parties are capable of working together. Resolution of the relocation issue and establishment of a parenting time schedule will alleviate the parties' major sources of conflict.

33. The parties agree on joint legal custody, and it is in [C.A.'s] best interests.

34. Because the parties have been unable to agree about relocation, the Court must decide this issue after considering all relevant factors under IC 31-14-13-2 and 31-17-2.2-1.

35. Both parties love [C.A.], have a close bond with him, have played a significant role in his care, are in good health, and are fit parents. Mother has been [C.A.'s] primary caregiver.

36. Both parties have provided a proper home and nurturing environment for [C.A.], who is well-adjusted to spending time in each party's home and community. [C.A.] will not start kindergarten until the fall of 2014. He has gone back and forth between the parties' homes and changed daycare/preschool providers in 2012 without problems.

\*\*\*

6

39. Although Father has been able to maintain a close bond with [C.A.] over the past two years as a result of his extraordinary efforts, there have been significant adverse impacts on [C.A.], including the reduction in frequency of contact and the diminished role Father has played. The adverse impacts on [C.A.] would increase greatly after he starts school if permanent relocation is allowed. Ms. Slayton's testimony indicates that having only weekend parenting time would significantly change the nature and quality of Father's parenting time, especially if it occurs at a motel.

***

43. The distance between Florence and Lafayette creates a serious obstacle to regular parenting time. Mother's move to Florence to attend college has resulted in [C.A.] spending hundreds of hours traveling over the past two years and thousands of dollars in expenses.

44. If permanent relocation is allowed, thousands of dollars and significant time each year will be spent, by the parties and [C.A.], on transportation for parenting time. This will adversely impact the resources available to meet [C.A.]'s other needs, including saving for college.

***

46. [C.A.] had no connection with South Carolina prior to the move. The evidence failed to show he developed any close relationships there since. Neither party has relatives there.

47. Mother's relocation decision clearly was not made recently. It was based in significant part on her long-standing dislike of Indiana and personal preference and pre-pregnancy plans regarding college. Mother did not articulate any reasons why her decision to attend school in Florence was in [C.A.'s] best interests or why a permanent relocation would serve his interests. She failed to explain any benefit to [C.A.] that would outweigh the substantial adverse impacts permanent relocation would have on [C.A.'s] relationship with Father and otherwise. Ms. Slayton indicated that reasons unrelated to a child's best interests are not a legitimate reason for a move that would adversely affect a child's relationship with the other parent.

48. Mother accepted employment in South Carolina two weeks before trial knowing full well that the Court had not yet ruled on relocation. She presented no evidence showing inability to obtain employment in Indiana. She admitted she could be licensed here and that she had not applied for work here. She also testified that she would get a job in Indiana if relocation is not allowed.

49. Father's objections to relocation have been made in good faith and to ensure he can maintain his close relationship with [C.A.] and be regularly involved in his son's life, which are legitimate reasons for his position.

50. The evidence indicates Mother fails to appreciate the importance of [C.A.'s] relationship with Father and of Father's continuing involvement in

[C.A.'s] life. Mother has made unilateral decisions that have interfered with and/or precluded Father from exercise[ing] [sic] parenting time in accordance with the parties' established practices and agreements. She has also engaged in other conduct that has interfered with Father's relationship with [C.A.] and undermined his rights as [C.A.'s] joint legal custodian under the provisional orders. Mother's actions make it less likely that the quality of [C.A.'s] close relationship with Father will be maintained if relocation is allowed.

51. Given the circumstances, including [C.A.'s] age, that he has yet to start school, the extended time he has spent in the Lafayette community and Mother's intention to return to Lafayette if permanent relocation is not allowed, that [C.A.] has gone back and forth between his parent's homes and switched daycare/preschool providers with no apparent significant problems, returning to Lafayette would not result in significant adverse impact to [C.A.].

52. In the event that Mother would choose not [to] return to the Lafayette area, Father is willing, able and ready to provide for [C.A.'s] care. He has located a daycare and physician, has maintained a regular schedule for [C.A.] during his parenting time, has engaged in school readiness activities with [C.A.], and makes sure both parties' families can spend time with [C.A.].

53. There has been continuing and substantial change in circumstances since entry of the Amended Order. It is not in [C.A.'s] best interest to allow permanent relocation to Florence. It is in [C.A.'s] best interest to return to and reside in Indiana.

Appellant's App. pp. 68-74 (record citations omitted).

In its conclusions of law, the trial court stated that all "prior orders were [] provisional in nature. No final order has previously been entered on issues of custody, parenting time, and relocation, and Mother is estopped from contending otherwise." Id. at 74. The court also concluded that both parties are fit, suitable parents to have custody and care of C.A. and ordered them to share joint legal custody. The court also determined:

5. Permanent relocation to South Carolina is not in [C.A.'s] best interests. It is in [C.A.'s] best interests to return to and reside in Indiana and for

8

Mother to provide his primary residence and Father to have liberal parenting time.

6. In light of the unusual circumstances in this case, it is in [C.A.'s] best interest that the Court's order giving Mother "primary physical possession" on a temporary basis be extended no later than March 31, 2013, so that Mother has a reasonable opportunity to return to Indiana and obtain employment here. Until such time as Mother returns her residence to Indiana or March 31, 2013, which ever first occurs, Mother shall have primary physical possession of [C.A.] and Father shall have liberal parenting time. It shall consist of 8 to 10 days each month, including a complete weekend without travel if reasonably possible, and regular communications by telephone and/or Skype. Mother and Father shall each be responsible for transporting the child 50% of the time, including all costs. If they are unable to agree, Father will provide transportation at the beginning of parenting time and Mother shall provide it at the end of the period. Transportation can be provided by another responsible adult if necessary.

***

8. The Court's temporary award of primary physical possession to Mother shall become a final order without the need for further hearing if Mother restores her residence in Tippecanoe County on or before March 31, 2013. In accordance with Indiana law, however, a final order remains subject to the Court's continuing jurisdiction. In the event the order becomes final, Father shall have liberal parenting time with [C.A.], which shall consist of two days a week from after preschool/school with an overnight and every other weekend. . . .

9. If Mother fails to re-establish her residence in Indiana by March 31, 2013, [C.A.'s] best interests would be served by and primary physical custody shall be awarded to Father on April 1, 2013, without the need for further hearing. In that event, Mother shall have parenting time in accordance with Father's plan for parenting time when distance is a factor as set forth in Exhibit 9, including the provisions relating to transportation.

Appellant's App. pp. 75-76. Mother now appeals.

**Posture of the Appealed Order**

Before we address Mother's claimed errors, we observe that the appealed order contains language that might lead to the conclusion that it is not a final judgment, but an interlocutory order. "An interlocutory order is one made before a final hearing on the

9

merits and requires something to be done or observed but does not determine the entire controversy." Bacon v. Bacon, 877 N.E.2d 801, 804 (Ind. Ct. App. 2007), trans. denied. A final judgment disposes of all claims as to all parties. [1] See Ind. Appellate Rule 2(H); see also Waldrip v. Waldrip, 976 N.E.2d 102, 109 (Ind. Ct. App. 2012) (stating "a final judgment is one that disposes of all claims as to all parties, ending the case and leaving nothing for future determination").

In its order, the trial court resolved the issue of primary physical custody of C.A., although custody is dependent on Mother's decision as to where she will reside. The temporary award of custody expires "no later than March 31, 2013," and the court ruled that Mother will retain custody if she chooses to reside in Indiana. However, Father will automatically obtain primary physical custody of C.A. on that date without any further hearing if Mother remains in South Carolina. When read in its entirety, the order clearly adjudicates custody and parenting time regarding C.A., and the trial court expressly states that no further hearing is required. Importantly, absent appeal, the order resolves all custody and parenting time issues unless and until one of the parties files a subsequent motion to modify custody and/or parenting time. For these reasons, we conclude that the order is a final judgment and address it accordingly.

**Standard of Review**

Father requested special findings of fact and conclusions thereon pursuant to Trial Rule 52(A). "In reviewing findings made pursuant to Rule 52, we first determine

---

[1] If a final judgment has not been entered or if the trial court's order is not an appealable interlocutory order pursuant to Appellate Rule 14, our court lacks subject matter jurisdiction to entertain the appeal. See In re Estate of Botkins, 970 N.E.2d 164, 168 (Ind. Ct. App. 2012).

whether the evidence supports the findings and then whether [the] findings support the judgment." K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453, 457 (Ind. 2009). "On appeal we 'shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" Id. (quoting Ind. Trial Rule 52(A)). "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment." Id. "A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts." Id.

We also acknowledge that we "'give considerable deference to the findings of the trial court in family law matters[.]'" Stone v. Stone, 991 N.E.2d 992, 999 (Ind. Ct. App. 2013) (quoting MacLafferty v. MacLafferty, 829 N.E.2d 938, 940 (Ind. 2005)). This appellate deference is, first and foremost, a reflection that the trial court is in the best position to judge the facts, ascertain family dynamics, and judge witness credibility and the like. Id. (citing MacLafferty, 829 N.E.2d at 940-41). "'Secondly, appeals that change the results below are especially disruptive in the family law setting.'" Id. (quoting MacLafferty, 829 N.E.2d at 940). "'But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result.'" Id. (quoting MacLafferty, 829 N.E.2d at 941).

**Discussion and Decision**

Mother raises numerous procedural and substantive challenges to the trial court's findings and conclusions. First, she challenges the trial court's authority to enter provisional orders in paternity proceedings. Mother also argues that the trial court erred

11

by applying the relocation statute in this case. Finally, she argues that certain trial court findings are not supported by the evidence.

A. *Provisional Orders In Paternity Proceedings*

Indiana Code section 31-15-4-8 provides that in dissolution actions, a trial court may issue orders for temporary maintenance or support "in such amounts and on such terms that are just and proper," and custody orders to the "extent the court considers proper." However, the General Assembly has not specifically authorized the use of provisional orders in paternity proceedings. See generally Ind. Code art. 31-14. Mother therefore argues that the trial court was without authority to treat the orders entered in this proceeding "as provisional and was without authority to enter a truly provisional order in this case." Appellant's Br. at 8.

Provisional orders are "designed to maintain the status quo of the parties." Linenburg v. Linenburg, 948 N.E.2d 1193, 1196 (Ind. Ct. App. 2011) (quoting Mosley v. Mosley, 906 N.E.2d 928, 929 (Ind. Ct. App. 2009)). "A provisional order is temporary in nature and terminates when the final dissolution decree is entered or the petition for dissolution is dismissed." Mosley, 906 N.E.2d at 930 (citing Ind. Code § 31-15-4-14).

> Great deference is given to the trial court's decision in provisional matters, as it should be. The trial court is making a preliminary determination on the basis of information that is yet to be fully developed. A provisional order is merely an interim order in place during the pendency of the dissolution proceedings, which terminates when the final dissolution decree is entered.

Id. See also Klotz v. Klotz, 747 N.E.2d 1187, 1191 (Ind. Ct. App. 2001) (stating "provisional orders are temporary orders that suffice until a full evidentiary hearing can be held").

12

As in dissolution proceedings, trial courts are called upon to make weighty decisions concerning the care and custody of a child in paternity actions. To that end, Indiana Code section 31-14-10-1 provides that after paternity of a child is established, "the court shall, in the initial determination, conduct a hearing to determine the issues of support, custody, and parenting time." The trial court "shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent." I.C.§ 31-14-13-2. In making a custody determination, the trial court "shall consider all relevant factors," including the following factors:

> (1) The age and sex of the child.
> (2) The wishes of the child's parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>> (A) the child's parents;
>> (B) the child's siblings; and
>> (C) any other person who may significantly affect the child's best interest.
> (5) The child's adjustment to home, school, and community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.
> (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

I.C. § 31-14-13-2. The trial court must also determine reasonable parenting time rights for the noncustodial parent. See I.C. § 31-14-14-1.

Because these issues may reasonably require multiple hearings to resolve, entering a provisional order in a paternity proceeding concerning parenting time and custody is quite appropriate while relevant issues are developed for resolution in a final hearing, if

13

necessary, and a final order. Moreover, issuing a provisional order in a paternity proceeding is consistent with Indiana Code section 33-28-1-5, which allows trial courts to "[m]ake all proper judgments, sentences, decrees, orders, and injunctions, issue all processes, and do other acts as may be proper to carry into effect the same, in conformity with Indiana laws and Constitution of the State of Indiana." See also Ind. Code § 33-29-1-4 (stating that the "judge of a standard superior court . . . has the same powers relating to the conduct of business of the court as the judge of the circuit court of the county in which the standard superior court is located").

B. *Was the Second Amended Provisional Order a Provisional Order or a Custody Order?*

On August 13, 2010, the trial court approved the parties' "Amended Second Provisional Order." The trial court and Father categorize this order as it is titled, but Mother argues that it was a final custody determination resolving all custody and parenting time issues between the parties.

The "Amended Second Provisional Order" states that Mother will be relocating with C.A. to South Carolina and "no Notice of Intent to Move shall be required." Appellant's App. p. 16. The order provides that the parties, who had reconciled, "will share physical custody of and the expenses for their child and the Mother will be attending school." Id. The order also states that if reconciliation fails and the parties cannot reach an agreement "to a shared physical custody parenting arrangement, then pending further court order, Mother shall have primary physical possession of [C.A.] and Father shall have the right to liberal parenting time with" C.A. Id. at 17.

14

The parties' reconciliation failed within months of Mother's move to South Carolina. However, as contemplated in the agreed order, the parties agreed to a shared physical custody arrangement, and Father had physical custody of C.A. in Indiana for approximately one week per month. These provisions in the order might have continued indefinitely if the parties could have continued to agree to a custody arrangement and no other hearing or judicial action would have been required. And the parties operated under the "Amended Second Provisional Order" for nearly two years without any additional court filing. For these reasons, we cannot conclude that the "Amended Second Provisional Order" was a "provisional order" as that term is understood under Indiana law. See Mosley, 906 N.E.2d at 930 (stating a "provisional order is merely an interim order in place during the pendency of the dissolution proceeding"); Klotz, 747 N.E.2d at 1191 (stating "provisional orders are temporary orders that suffice until a full evidentiary hearing can be held"). The order at issue is an agreed order for the custody of C.A. Therefore, the proceedings that followed should have been adjudicated under the custody modification statute.

C. *Custody Modification*

The trial court chose to address the custody issue under the relocation statutes, and this is not the proper manner to consider and resolve this issue between these parents who have never married. Moreover, we observe that for the last two years of his young life, C.A. has resided in South Carolina with Mother having primary physical custody.

Although the trial court improperly addressed the custody issues in this case under the relocation statutes, the trial court was in fact presented with evidence concerning the

15

best interests of the child and the factors listed in Indiana Code section 31-14-13-2. See Ind. Code § 31-14-13-6 (stating that a trial court may modify a child custody order if the modification is in the best interests of the child and there is a substantial change in at least one of the following factors listed in section 31-14-13-2). The parties tried this issue through the evidence submitted, and it was certainly appropriate to consider the effect that the distance between Indiana and South Carolina would have on C.A.'s and Father's relationship. See Ind. Code § 31-14-13-2.

Indiana Code section 31-14-13-6 provides that a trial court "may not modify a child custody order unless" there is a "substantial change" in one of the factors listed in section 31-14-13-2. To the extent the trial court's order can be considered a modification of custody, the court failed to make this required finding under section 31-14-13-6.[2]

In addition, the trial court's order concludes that it is in C.A.'s "best interests to return to and reside in Indiana and for Mother to provide his primary residence and Father to have liberal parenting time." Appellant's App. p. 75. However, if Mother failed to establish her residence in Indiana by March 31, 2013, the court determined that C.A.'s "best interest would be served by and primary physical custody shall be awarded to Father on April 1, 2013 without the need for further hearing." Id. at 76.

An automatic, future custody modification order violates the custody modification statute. Bojrab v. Bojrab, 810 N.E.2d 1008, 1012 (Ind. 2004). Language declaring that a

---

[2] In the "Amended Second Provisional Order," the parties agreed that a "future separation shall constitute a material change in circumstances." However, they did not agree that a separation would be a circumstance warranting modification of custody. Moreover, the parties were separated for well over a year before Father initiated further proceedings in this case. Finally, the parties' agreement cannot circumvent the statutory requirements in section 31-14-13-6.

present award of custody is conditioned upon the continuation of a child's place of residence is proper as "a determination of present custody under carefully designated conditions." Id. However, language ordering that custody shall be automatically modified in the event of one parent's relocation "is inconsistent with the requirements of the custody modification statute[.]" Id.

> There is a significant difference between the two phrases. One purports to automatically change custody upon the happening of a future event; the other declares that the present award of custody is conditioned upon the continuation of the children's place of residence. While the automatic future custody modification violates the custody modification statute, the conditional determination of present custody does not.

Id.

Mother has been C.A.'s primary caregiver since his birth, although Father has been significantly involved in his upbringing in a continuing and consistent fashion. Appellant's App. p. 70. Yet, the trial court concluded that primary physical custody would be automatically modified if Mother failed to establish her residence in Indiana by March 31, 2013. Consequently, the trial court's order violates Indiana Code section 31-14-13-6, and we reverse the trial court's order as to this prospective modification of custody. See Bojrab, 810 N.E.2d at 1012.

**Conclusion**

The record does not disclose whether Mother remains in South Carolina or has returned to Indiana. For these reasons, we reverse that portion of the trial court's order automatically granting Father primary custody of C.A. if Mother failed to return to Indiana and remand for a hearing and redetermination of C.A.'s custody.

17

Reversed and remanded for proceedings consistent with this opinion.[3]

NAJAM, J., concurs.

BROWN, J., dissents with separate opinion.

---

[3] For this reason, we do not address Mother's claim that certain trial court findings are not supported by the evidence.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE PATERNITY OF C.J.A.: | ) | |
| | ) | |
| G.C. (Mother), | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1302-JP-137 |
| | ) | |
| T.A. (Father), | ) | |
| | ) | |
| Appellee. | ) | |

**BROWN, Judge, dissenting**

I respectfully dissent from the majority's conclusion that the order is a final judgment. "The authority of the Indiana Supreme Court and Court of Appeals to exercise appellate jurisdiction is generally limited to appeals from final judgments." Ramsey v. Moore, 959 N.E.2d 246, 251 (Ind. 2012) (quoting Allstate Ins. Co. v. Fields, 842 N.E.2d 804, 806 (Ind. 2006), reh'g denied). We have the duty to determine whether we have jurisdiction over an appeal before proceeding to determine the rights of the parties on the merits. Allstate Ins. Co. v. Scroghan, 801 N.E.2d 191, 193 (Ind. Ct. App. 2004), trans. denied. Pursuant to Ind. Appellate Rule 5, this court has jurisdiction over appeals from

final judgments of trial courts and only those interlocutory orders from trial courts that are brought in accordance with Ind. Appellate Rule 14.

Ind. Appellate Rule 2(H) provides that a judgment is a final judgment if:

(1)    it disposes of all claims as to all parties;

(2)    the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties;

(3)    it is deemed final under Trial Rule 60(C);

(4)    it is a ruling on either a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 or Criminal Rule 16; or

(5)    it is otherwise deemed final by law.

The trial court's order contains several paragraphs in its conclusions of law that indicate that the order is not a final judgment, specifically:

6.    In light of the unusual circumstances in this case, it is in [C.A.'s] best interests that the Court's order giving Mother "primary physical possession" on a temporary basis be extended to no later than March 31, 2013, so that Mother has a reasonable opportunity to return to Indiana and obtain employment here. Until such time as Mother returns her residence to Indiana or March 31, 2013, which ever first occurs, Mother shall have primary physical possession of [C.A.] and Father shall have liberal parenting time. . . .

* * * * *

8.    *The Court's temporary award of primary physical possession to Mother shall become a final order without the need for further hearing if Mother restores her residence in Tippecanoe County on or before March 31, 2013.* In accordance with Indiana law, however, a final order remains subject to the Court's continuing jurisdiction. *In the event the order becomes final*, Father shall have liberal

20

parenting time with [C.A.], which shall consist of two days a week from after preschool/school with an overnight and every other weekend. Weekend parenting time shall include any connected days off from school not covered by the IPTG provisions, including but not limited to fall break, President's Day, Martin Luther King Day, and mid-semester break. Mother's alternating weekends shall be similarly extended. The IPTG will govern holiday, special days, summer parenting time, and the parties' general obligations, unless otherwise agreed by the parties.

* * * * *

12. Father shall continue to pay support at the same rate as he has paid immediately prior to the hearing on November 29, 2012. *The Court will hold the issues of support modification and related matters until Mother determines where to reside.* Counsel are requested to advise the Court as circumstances require.

Appellant's Appendix at 75-76 (emphases added).

While the majority concludes that "absent appeal, the order resolves all custody and parenting time issues unless and until one of the parties files a subsequent motion to modify custody and/or parenting time," *supra* at 10-11, the order indicates that a final determination is dependent on where Mother resides. Based upon the language in the order, I would find that it did not dispose of all claims as to all parties and did not constitute a final judgment. See Georgos v. Jackson, 790 N.E.2d 448, 451 (Ind. 2003) (holding that a final judgment disposes of all issues as to all parties thereby ending the particular case and that it leaves nothing for future determination); R.W.M. v. A.W.M., 926 N.E.2d 538, 542 (Ind. Ct. App. 2010) (holding that the trial court's judgment resolved child custody and support but was not a final appealable judgment from all of the consolidated pending cases as it left one or more issues unresolved). I also cannot say

21

that the order falls into any of the remaining categories set forth in Ind. Appellate Rule

2(H).[4]

Parties are permitted to appeal "as a matter of right" the following interlocutory

orders:

(1)    For the payment of money;

(2)    To compel the execution of any document;

(3)    To compel the delivery or assignment of any securities, evidence of debt, documents or things in action;

(4)    For the sale or delivery of the possession of real property;

(5)    Granting or refusing to grant, dissolving, or refusing to dissolve a preliminary injunction;

(6)    Appointing or refusing to appoint a receiver, or revoking or refusing to revoke the appointment of a receiver;

(7)    For a writ of habeas corpus not otherwise authorized to be taken directly to the Supreme Court;

(8)    Transferring or refusing to transfer a case under Trial Rule 75; and

(9)    Issued by an Administrative Agency that by statute is expressly required to be appealed as a mandatory interlocutory appeal.

Ind. Appellate Rule 14(A).  The trial court's order does not fit into any of these categories.

Thus, Mother was not entitled to appeal the court's order as a matter of right.

Other interlocutory orders may be appealed "if the trial court certifies its order and

the Court of Appeals accepts jurisdiction over the appeal," Ind. Appellate Rule 14(B), or

---

[4] Mother's notice of appeal indicates that she was appealing from a final judgment.  Specifically, Mother's notice of appeal checked the box corresponding to an "[a]ppeal from a Final Judgment, as defined by Appellate Rule 2(H) and 9(I)."  Ind. Appellate Rule 9(I) addresses appeals from administrative agencies and is not applicable.

if an interlocutory appeal is provided by statute. Ind. Appellate Rule 14(D). There is no indication that Mother sought certification from the trial court or permission from this court to file a discretionary interlocutory appeal. Nor has Mother demonstrated a statutory right to appeal. Accordingly, I would find that we do not have jurisdiction over this appeal and dismiss. See Moser v. Moser, 838 N.E.2d 532, 535-536 (Ind. Ct. App. 2005) (holding that this court did not have jurisdiction and dismissing the appeal because the trial court's order was not a final judgment and was not an interlocutory appeal of right), trans. denied.