## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 10 2016, 6:36 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

E. Kent Moore
Laszynski & Moore
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Pamela J. Hermes
Gambs, Mucker & Bauman
Lafayette, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

In Re the Paternity of C.A.;

G.C. (Mother),

*Appellant-Respondent,*

v.

T.A. (Father),

*Appellee-Petitioner.*

February 10, 2016

Court of Appeals Case No.
79A04-1502-JP-79

Appeal from the Tippecanoe
Circuit Court

The Honorable Donald L. Daniel,
Judge

Trial Court Cause No.
79C01-1002-JP-4

**Mathias, Judge.**

[1]     G.C. ("Mother") appeals the order of the Tippecanoe Circuit Court establishing T.A.'s paternity over the parties' son, C.A., and determining custody of the child. Specifically, the trial court ordered Mother be awarded primary physical custody of C.A., but only if she returned to Indiana from South Carolina. In the

event she failed to establish her residence in Indiana, Father would automatically have primary physical custody of C.A. On appeal, Mother presents two issues, which we renumber and restate as:

I.  Whether certain parts of the trial court's factual findings are clearly erroneous;

II.  Whether the trial court could properly enter a provisional order in a paternity case;

III.  Whether the trial court improperly relied upon the relocation statutes in determining the issue of custody; and

IV.  Whether the trial court's custody order contains an improper provision for a prospective change in custody.

We affirm in part, reverse in part, and remand.

## Facts and Procedural History

This is our second visit with this case and its parties. The foundational facts have not changed, and we therefore refer to and adopt those facts set forth in our earlier opinion:

> Mother was born and resided in South Carolina until her family relocated to West Lafayette in 2006, after her father accepted a position at Purdue University. Mother and Father met in high school and became involved in a romantic relationship. During their relationship, Mother became pregnant. Father was actively involved in Mother's prenatal care and the birth of their child, C.A., who was born on December 12, 2008. Father established his paternity to C.A. by affidavit one day after his birth.
>
> Father was involved in caring for C.A. and exercised parenting time with him. Initially, his parenting time occurred at Mother's

parents' home, but eventually, Father was able to exercise parenting time at his own home. After Mother graduated from high school, she enrolled at Ivy Tech and took classes part-time. While Mother was in class, Father cared for C.A. at his workplace, which is a trucking business owned by Father's uncle.

The parties successfully co-parented C.A. until Mother decided that she wanted to return to South Carolina to finish her college courses. When Father objected to Mother's relocation, she began to restrict his parenting time. Therefore, on February 2, 2010, Father petitioned the trial court to enter an order on custody, child support, and parenting time. The parties agreed to mediate the issues raised in Father's petition, and on April 12, 2010, the trial court issued a "Provisional Order" approving the parties mediated agreement concerning parenting time and child support.

Shortly thereafter, Mother again expressed her desire to relocate to South Carolina and finish her college degree. Consequently, this case was set for trial in July 2010. But on some date before the scheduled trial date, the parties reconciled. Therefore, at the parties' request, the trial date was vacated and an "Amended Second Provisional Order" was entered, which provided in pertinent part:

> 3.  The parties have reconciled and have agreed to move together to South Carolina on or after August 1, 2010, with their son, where they will be sharing physical custody of and the expenses for their child and the Mother will be attending school. In light of the parties' reconciliation, no Notice of Intent to Move shall be required.
>
> 4.  The parties shall share joint legal custody of [C.A.] and shall share physical possession of [C.A.] while their reconciliation continues.  In the event

that the parties['] reconciliation fails and they no longer agree to a shared physical custody parenting arrangement, then pending further court order, Mother shall have primary physical possession of [C.A.] and Father shall have the right to liberal parenting time with [C.A.], which shall at a minimum be at least in accordance with the age appropriate parenting time under the Guidelines, including overnights for regular parenting, shall include over nights for multi-day holiday parenting time as provided in the parties' mediation agreement, and shall be subject to the general provisions of the Guidelines, including with regard to the right to additional parenting time if there is a need for a care provider.

***

6. The parties acknowledge and agree that the Court has continuing jurisdiction over the issues of child custody, support and parenting time, and that a future separation shall constitute a material change in circumstances.

Appellant's App. pp. 18-19.

Mother and C.A. moved to South Carolina in August 2010, and Father moved shortly thereafter. Mother and Father's relationship was tumultuous, and Father lived in Indiana and South Carolina throughout the fall of 2010. In November 2010, the parties determined that they no longer desired to reconcile. They agreed that Father would pay $300 per month in child support to Mother, which Father later voluntarily increased to $500 per month due to an increase in his income. They also agreed that C.A. would spend approximately one week per month with Father in Indiana. Father generally bore the entire burden for C.A.'s transportation between Indiana and South Carolina and the associated travel expenses. Mother indicated

that she was not willing to assist with C.A.'s transportation for parenting time with Father.

Mother started school in South Carolina intending to complete a one-year program, but changed her plans and enrolled in a two-year physical therapy assistant ("PTA") program. Mother completed that program and graduated on October 17, 2012. She also obtained a PTA license in South Carolina. After Mother notified Father that she did not plan to return to Indiana, a hearing date was set for November 29, 2012.

At the hearing, Mother testified that she had obtained employment in South Carolina that would pay approximately $1000 per week. Father earns a similar income working for his uncle's trucking business. Father's uncle allows Father flexibility in his working hours to accommodate Father's parenting time with C.A. Father's uncle, aunt, and cousins spend a significant amount of time with C.A. and live in the West Lafayette area. Mother's parents also still live in the West Lafayette area, but Mother's mother spends a significant amount of time in South Carolina. Her parents might return to South Carolina after Mother's father retires from Purdue University.

Father also hired an expert, Theresa Slayton, to perform a parenting assessment of Father and C.A. Ms. Slayton observed that Father and C.A. have a close bond, and Father provides a loving, nurturing environment for C.A. Ms. Slayton testified that Father understands and is capable of meeting C.A.'s emotional and developmental needs. Further, Ms. Slayton gave her opinion of the negative impact to the child when the child is separated from the non-custodial parent by a long distance.

On January 7, 2012, the trial court issued the following pertinent findings and conclusions:

23. Until several months after the [August 2010] move [to South Carolina], Father understood Mother was pursuing her LPN degree and would finish in a year, but Mother had applied for and ultimately enrolled in the physical therapy assistant ("PTA") program, which delayed her graduation by more than a year.

24. The parties were able to make arrangements until March of 2012, when Father was unable to get parenting time. Father proposed a schedule for the remainder of the year, but Mother would only schedule a month at a time. There have been problems since March and the case was scheduled for trial in contemplation of Mother's expected graduation.

25. Mother graduated in October of 2012 and obtained a South Carolina PTA license. She applied for jobs, mostly in South Carolina, but considered relocation from Florence, including to North Carolina. She did not apply or look for work in Indiana. Mother was able to complete her degree without taking out loans due to the assistance she received from her parents, money from an inheritance, and funds obtained from Pell Grants.

***

27. It is feasible for Mother to return to Indiana. She is qualified to seek licensure here. Mother testified licensure could be completed in 3 months. Mother also testified that if the Court did not allow permanent relocation, she would return to Indiana and get a job here.

28. Mother's mother may be moving to Florence and living with the Mother.

29. Since shortly after [C.A.'s] birth, Father has worked at AMT Trucking, except for the time in

2010 when reconciliation efforts were ongoing. AMT is a family business owned by Father's uncle ("Uncle"). Father's father died when he was two and Uncle has been a father figure for Father since then. Father is considered part of Uncle's family, as is [C.A.]. Uncle supported Father's reconciliation with Mother, but said he would rehire Father if things did not work out.

***

31. It is far less feasible for Father to relocate to South Carolina than it is for the Mother to return to Indiana.

32. The parties are capable of working together. Resolution of the relocation issue and establishment of a parenting time schedule will alleviate the parties' major sources of conflict.

33. The parties agree on joint legal custody, and it is in [C.A.'s] best interests.

34. Because the parties have been unable to agree about relocation, the Court must decide this issue after considering all relevant factors under IC 31-14-13-2 and 31-17-2.2-1.

35. Both parties love [C.A.], have a close bond with him, have played a significant role in his care, are in good health, and are fit parents. Mother has been [C.A.'s] primary caregiver.

36. Both parties have provided a proper home and nurturing environment for [C.A.], who is well-adjusted to spending time in each party's home and community. [C.A.] will not start kindergarten until the fall of 2014. He has gone back and forth between the parties' homes and changed daycare/preschool providers in 2012 without problems.

*** 

39.  Although Father has been able to maintain a close bond with [C.A.] over the past two years as a result of his extraordinary efforts, there have been significant adverse impacts on [C.A.], including the reduction in frequency of contact and the diminished role Father has played. The adverse impacts on [C.A.] would increase greatly after he starts school if permanent relocation is allowed. Ms. Slayton's testimony indicates that having only weekend parenting time would significantly change the nature and quality of Father's parenting time, especially if it occurs at a motel.

*** 

43.  The distance between Florence and Lafayette creates a serious obstacle to regular parenting time. Mother's move to Florence to attend college has resulted in [C.A.] spending hundreds of hours traveling over the past two years and thousands of dollars in expenses.

44.  If permanent relocation is allowed, thousands of dollars and significant time each year will be spent, by the parties and [C.A.], on transportation for parenting time.  This will adversely impact the resources available to meet [C.A.]'s other needs, including saving for college.

*** 

46.  [C.A.] had no connection with South Carolina prior to the move. The evidence failed to show he developed any close relationships there since. Neither party has relatives there.

47.  Mother's relocation decision clearly was not made recently. It was based in significant part on her long-standing dislike of Indiana and personal

preference and pre-pregnancy plans regarding college. Mother did not articulate any reasons why her decision to attend school in Florence was in [C.A.'s] best interests or why a permanent relocation would serve his interests. She failed to explain any benefit to [C.A.] that would outweigh the substantial adverse impacts permanent relocation would have on [C.A.'s] relationship with Father and otherwise. Ms. Slayton indicated that reasons unrelated to a child's best interests are not a legitimate reason for a move that would adversely affect a child's relationship with the other parent.

48. Mother accepted employment in South Carolina two weeks before trial knowing full well that the Court had not yet ruled on relocation. She presented no evidence showing inability to obtain employment in Indiana. She admitted she could be licensed here and that she had not applied for work here. She also testified that she would get a job in Indiana if relocation is not allowed.

49. Father's objections to relocation have been made in good faith and to ensure he can maintain his close relationship with [C.A.] and be regularly involved in his son's life, which are legitimate reasons for his position.

50. The evidence indicates Mother fails to appreciate the importance of [C.A.'s] relationship with Father and of Father's continuing involvement in [C.A.'s] life. Mother has made unilateral decisions that have interfered with and/or precluded Father from exercise[ing] [sic] parenting time in accordance with the parties' established practices and agreements. She has also engaged in other conduct that has interfered with Father's relationship with [C.A.] and undermined his rights as [C.A.'s] joint legal custodian under the

provisional orders. Mother's actions make it less likely that the quality of [C.A.'s] close relationship with Father will be maintained if relocation is allowed.

51. Given the circumstances, including [C.A.'s] age, that he has yet to start school, the extended time he has spent in the Lafayette community and Mother's intention to return to Lafayette if permanent relocation is not allowed, that [C.A.] has gone back and forth between his parent's homes and switched daycare/preschool providers with no apparent significant problems, returning to Lafayette would not result in significant adverse impact to [C.A.].

52. In the event that Mother would choose not [to] return to the Lafayette area, Father is willing, able and ready to provide for [C.A.'s] care. He has located a daycare and physician, has maintained a regular schedule for [C.A.] during his parenting time, has engaged in school readiness activities with [C.A.], and makes sure both parties' families can spend time with [C.A.].

53. There has been continuing and substantial change in circumstances since entry of the Amended Order. It is not in [C.A.'s] best interest to allow permanent relocation to Florence. It is in [C.A.'s] best interest to return to and reside in Indiana.

Appellant's App. pp. 68-74 (record citations omitted).

In its conclusions of law, the trial court stated that all "prior orders were [] provisional in nature. No final order has previously been entered on issues of custody, parenting time, and relocation, and Mother is estopped from contending otherwise." Id. at 74. The court also concluded that both parties are fit,

suitable parents to have custody and care of C.A. and ordered them to share joint legal custody. The court also determined:

> 5. Permanent relocation to South Carolina is not in [C.A.'s] best interests. It is in [C.A.'s] best interests to return to and reside in Indiana and for Mother to provide his primary residence and Father to have liberal parenting time.
>
> 6. In light of the unusual circumstances in this case, it is in [C.A.'s] best interest that the Court's order giving Mother "primary physical possession" on a temporary basis be extended no later than March 31, 2013, so that Mother has a reasonable opportunity to return to Indiana and obtain employment here. Until such time as Mother returns her residence to Indiana or March 31, 2013, which ever first occurs, Mother shall have primary physical possession of [C.A.] and Father shall have liberal parenting time. It shall consist of 8 to 10 days each month, including a complete weekend without travel if reasonably possible, and regular communications by telephone and/or Skype. Mother and Father shall each be responsible for transporting the child 50% of the time, including all costs. If they are unable to agree, Father will provide transportation at the beginning of parenting time and Mother shall provide it at the end of the period. Transportation can be provided by another responsible adult if necessary.
>
> ***
>
> 8. The Court's temporary award of primary physical possession to Mother shall become a final order without the need for further hearing if Mother restores her residence in Tippecanoe County on or before March 31, 2013. In accordance with Indiana

law, however, a final order remains subject to the Court's continuing jurisdiction. In the event the order becomes final, Father shall have liberal parenting time with [C.A.], which shall consist of two days a week from after preschool/school with an overnight and every other weekend. . . .

9. If Mother fails to re-establish her residence in Indiana by March 31, 2013, [C.A.'s] best interests would be served by and primary physical custody shall be awarded to Father on April 1, 2013, without the need for further hearing. In that event, Mother shall have parenting time in accordance with Father's plan for parenting time when distance is a factor as set forth in Exhibit 9, including the provisions relating to transportation.

Appellant's App. pp. 75-76.

*In re the Paternity of C.J.A.*, 3 N.E.3d 1020, 1023-28 (Ind. Ct. App. 2014), *reh'g denied*, *trans. granted* (alterations in original).

[4] Mother appealed this order of the trial court. On appeal, we held that the trial court's order was a final appealable judgment, that the trial court did have authority to enter a provisional order in a paternity action, but that the trial court's custody determination impermissibly ordered an automatic change of custody to Father in the event that Mother did not return to Indiana. *See id.* at 1032.

[5] Mother petitioned for transfer, which our supreme court granted. *See In re the Paternity of C.J.A.*, 12 N.E.3d 876 (Ind. 2014). In its order granting transfer, the court concluded that the trial court's findings of fact, conclusions of law, and

order for judgment was not a final appealable order. *Id*. Therefore, the court dismissed the appeal. *Id*.

[6] The case then returned to the trial court. The parties appeared before the trial court on December 22, 2014, to finalize the remaining open issues by agreement between the parties. On January 21, 2015, the trial court entered a final order that incorporated by reference the previously entered order at issue in the first appeal, including the facts recited above, and resolved all outstanding issues. Mother now appeals from this final order.

## Standard of Review

[7] Father requested special findings of fact and conclusions thereon pursuant to Trial Rule 52(A). In reviewing findings made pursuant to Trial Rule 52, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). We will not set aside the findings or the judgment on appeal unless they are clearly erroneous, and we give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id*. (citing T.R. 52(A)). A judgment is clearly erroneous if no evidence supports the findings or the findings fail to support the judgment. *Id*. A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *Id*.

[8] We give considerable deference to the findings of the trial court in family law matters. *Stone v. Stone*, 991 N.E.2d 992, 999 (Ind. Ct. App. 2013) (citing *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005)). This deference is a

reflection that the trial court is in the best position to judge the facts, ascertain family dynamics, and judge witness credibility and the like. *Id.* (citing *MacLafferty*, 829 N.E.2d at 940-41). "'Secondly, appeals that change the results below are especially disruptive in the family law setting.'" *Id.* (quoting *MacLafferty*, 829 N.E.2d at 940). Accordingly, we neither reweigh the evidence or assess the credibility of witnesses, and we consider only the evidence most favorable to the judgment. *In re Paternity of Ba.S.*, 911 N.E.2d 1252, 1254 (Ind. Ct. App. 2009). "'But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result.'" *Stone,* 991 N.E.2d at 999 (quoting *MacLafferty*, 829 N.E.2d at 941).

## I.  Trial Court's Findings of Fact

Mother claims that several of the trial court's factual findings are not supported by the evidence. She first attacks the sufficiency of the evidence supporting the trial court's finding that C.A. had not developed any close connections in South Carolina and that C.A. had no relatives there. Mother refers to her testimony that she had significant personal connections in South Carolina who she considered like family. However, this is simply a request for us to reweigh the evidence, which we will not do. *In re Paternity of Ba.S.*, 911 N.E.2d at 1254.

Mother also complains that the trial court found that her desire to move to South Carolina was based on a "long-standing dislike of Indiana." Appellant's App. p. 72. However, Mother herself testified that she had trouble adjusting to Indiana after she moved here with her parents when she was a teenager.

Mother's mother testified that Mother had trouble adjusting to life in Indiana and spoke of moving to South Carolina before she became pregnant with C.A. We therefore cannot fault the trial court for finding that Mother did not like living in Indiana.

[11] Mother further claims that the trial court erred in finding that it would be easier for her to move to Indiana than it would be for Father to relocate to South Carolina. However, evidence to support the trial court's decision was present. Specifically, Father never established a permanent residence in South Carolina, he had a high school education and his employment was tied to a family trucking business, whereas Mother admitted that she could obtain her license to be a physical therapy assistant in Indiana. Moreover, unlike Father, Mother has family in Indiana that could assist in her move. We therefore cannot say that the trial court clearly erred in finding that it would be easier for her to move to Indiana.

[12] Mother briefly claims that the trial court erred in finding that she declined to help with the expenses involved in transporting C.A. for parenting time with Father. Mother does not directly deny this but simply asks us to consider evidence in her favor and come to a different conclusion than did the trial court. Again, this is not our prerogative on appeal. *In re Paternity of B.A.Sc.*, 911 N.E.2d at 1254.

[13] The trial court also found that Father began work full time in 2008 to support C.A. Mother notes that the trial court did not order support until 2010.

However, this does not negate the evidence that Father began to support his child even before being ordered to do so by the court.

[14] Lastly, the Mother challenges the finding of the trial court that, if Mother were allowed to "relocate" to South Carolina, Mother's actions would make it "less likely that the quality of [C.A.]'s close relationship with Father will be maintained." Appellant's App. p. 73. Again, this overlooks the evidence that Mother had not fully cooperated with Father's exercise of his parenting time. It also ignores the evidence in the record by the custody evaluator, who testified that the quality and nature of Father's parenting time would significantly change if C.A. remained in South Carolina and started school, thereby reducing Father's parenting time to weekends, as opposed to the more frequent and longer-lasting parenting time Father and C.A. had at the time.

## II. Provisional Orders in Paternity Actions

[15] As she did in her earlier attempt to appeal, Mother again challenges the authority of the trial court to enter a provisional order in a paternity action. We again conclude that the trial court did in fact have such authority. As we wrote before:

> Indiana Code section 31-15-4-8 provides that in dissolution actions, a trial court may issue orders for temporary maintenance or support "in such amounts and on such terms that are just and proper," and custody orders to the "extent the court considers proper." However, the General Assembly has not specifically authorized the use of provisional orders in paternity proceedings. *See generally* Ind. Code art. 31-14. Mother therefore argues that the trial court was without authority to treat the orders entered in

this proceeding "as provisional and was without authority to enter a truly provisional order in this case." Appellant's Br. at 8.

Provisional orders are "designed to maintain the status quo of the parties." *Linenburg v. Linenburg*, 948 N.E.2d 1193, 1196 (Ind. Ct. App. 2011) (quoting *Mosley v. Mosley*, 906 N.E.2d 928, 929 (Ind. Ct. App. 2009)). "A provisional order is temporary in nature and terminates when the final dissolution decree is entered or the petition for dissolution is dismissed." *Mosley*, 906 N.E.2d at 930 (citing Ind. Code § 31-15-4-14).

> Great deference is given to the trial court's decision in provisional matters, as it should be. The trial court is making a preliminary determination on the basis of information that is yet to be fully developed. A provisional order is merely an interim order in place during the pendency of the dissolution proceedings, which terminates when the final dissolution decree is entered.

*Id. See also Klotz v. Klotz*, 747 N.E.2d 1187, 1191 (Ind. Ct. App. 2001) (stating "provisional orders are temporary orders that suffice until a full evidentiary hearing can be held").

As in dissolution proceedings, trial courts are called upon to make weighty decisions concerning the care and custody of a child in paternity actions. To that end, Indiana Code section 31-14-10-1 provides that after paternity of a child is established, "the court shall, in the initial determination, conduct a hearing to determine the issues of support, custody, and parenting time." The trial court "shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent." I.C.§ 31-14-13-2. In making a custody determination, the trial court "shall consider all relevant factors," including the following factors:

(1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

> (A) the child's parents;

> (B) the child's siblings; and

> (C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

I.C. § 31-14-13-2. The trial court must also determine reasonable parenting time rights for the noncustodial parent. See I.C. § 31-14-14-1.

Because these issues may reasonably require multiple hearings to resolve, entering a provisional order in a paternity proceeding concerning parenting time and custody is quite appropriate while relevant issues are developed for resolution in a final hearing, if necessary, and a final order. Moreover, issuing a provisional order in a paternity proceeding is consistent with Indiana Code section 33-28-1-5, which allows trial courts to "[m]ake all proper

judgments, sentences, decrees, orders, and injunctions, issue all processes, and do other acts as may be proper to carry into effect the same, in conformity with Indiana laws and Constitution of the State of Indiana." *See also* Ind. Code § 33-29-1-4 (stating that the "judge of a standard superior court . . . has the same powers relating to the conduct of business of the court as the judge of the circuit court of the county in which the standard superior court is located").

*In re Paternity of C.J.A.*, 3 N.E.3d at 1029-30.

[16] Although our earlier opinion was vacated, it was vacated on grounds not affecting the substance of our holding. We therefore adopt this language from our earlier opinion and again hold that the trial court did have authority to enter a provisional order in the paternity action.

### III. Relocation Statutes

[17] Mother also repeats her claim that the trial court's decision was improperly based on consideration of the relocation statutes. Again, we agree. As we stated previously, C.A. had resided with Mother in South Carolina for two years prior to the trial court's provisional order. *In re Paternity of C.J.A.*, 3 N.E.3d at 1031. In the trial court's Second Provisional Order, which was entered pursuant to the agreement of both parties, it is specifically noted that the parties agreed to move to South Carolina and that "no Notice of Intent to Relocate shall be required." Appellant's App. p. 18. Thus, by the time of the order at issue now, relocation had already occurred by agreement of the parties, and Mother and C.A. had lived in South Carolina for two years. Once the relocation had occurred by

agreement and was a *fait accompli*, it was improper for the trial court to consider the custody issue under the rubric of the relocation statutes.[1]

[18]     Still, as we noted before:

> [T]he trial court "was in fact presented with evidence concerning the best interests of the child and the factors listed in Indiana Code section 31-14-13-2. *See* Ind. Code § 31-14-13-6 (stating that a trial court may modify a child custody order if the modification is in the best interests of the child and there is a substantial change in at least one of the following factors listed in section 31-14-13-2)."

> The parties tried this issue through the evidence submitted, and it was certainly appropriate to consider the effect that the distance between Indiana and South Carolina would have on C.A.'s and Father's relationship. *See* Ind. Code § 31-14-13-2.

> Indiana Code section 31-14-13-6 provides that a trial court "may not modify a child custody order unless" there is a "substantial change" in one of the factors listed in section 31-14-13-2.

---

[1] We note, however, that the relocation statutes do appear to apply to paternity cases in addition to dissolution cases. Indiana Code section 31-14-13-10, part of the paternity statutes, provides:

> If an individual who has been awarded custody of or parenting time with a child under this article . . . intends to move the individual's residence, the individual must:
> (1) file a notice of that intent with the clerk of the court that issued the custody or parenting time order; and
> (2) send a copy of the notice to each nonrelocating individual in accordance with IC 31-17-2.2.

Thus, the paternity relocation statute directly refers to section 31-17-2.2, the chapter dealing with relocation in the context of dissolution actions. *See also In re Paternity of X.A.S.*, 928 N.E.2d 222, 224-25 (Ind. Ct. App. 2010) (applying the relocation statutes in a paternity action), *trans. denied*; *In re Paternity of Ba.S.*, 911 N.E.2d 1252, 1255 (Ind. Ct. App. 2009) (same).

*In re Paternity of C.J.A.*, 3 N.E.3d at 1031.

[19] Here, the parties both agree that a substantial change in these factors exists, and the trial court also found a "continuing and substantial change in circumstances" since the entry of the Second Provisional Order. Appellant's App. p. 74. The trial court was within its discretion to conclude that the change in the parties' relationship, Mother's insistence to live in South Carolina, and Father's desire to return to Indiana all constituted a substantial change in one of the factors listed in Indiana Code section 31-14-13-2.

[20] Both parties also agree that, because a substantial change exists in one of the statutory factors under section 2, the ultimate issue turns on a determination of C.A.'s best interests. *See* I.C. § 31.14.13.6. Here, the trial court made a specific finding that it was in C.A.'s best interests for Mother to retain custody. *See* Appellant's App. p. 75 ("It is in [C.A.]'s best interests to return to and reside in Indiana and for Mother to provide his primary residence and Father to have liberal parenting time."). Since Mother currently resides in Indiana, we see no reason to disturb the judgment of the trial court with regard to C.A.'s custody.

## IV. Prospective Change in Child Custody

[21] The trial court also concluded that it if Mother failed to establish her residence in Indiana by March 31, 2013, then C.A.'s "best interest would be served by and primary physical custody shall be awarded to Father on April 1, 2013 without the need for further hearing." Appellant's App. p. 76.

[22] As we discussed previously:

An automatic, future custody modification order violates the custody modification statute. *Bojrab v. Bojrab*, 810 N.E.2d 1008, 1012 (Ind. 2004). Language declaring that a present award of custody is conditioned upon the continuation of a child's place of residence is proper as "a determination of present custody under carefully designated conditions." *Id*. However, language ordering that custody shall be automatically modified in the event of one parent's relocation "is inconsistent with the requirements of the custody modification statute[.]" *Id*.

> There is a significant difference between the two phrases. One purports to automatically change custody upon the happening of a future event; the other declares that the present award of custody is conditioned upon the continuation of the children's place of residence. While the automatic future custody modification violates the custody modification statute, the conditional determination of present custody does not.

*Id*.

> Mother has been C.A.'s primary caregiver since his birth, although Father has been significantly involved in his upbringing in a continuing and consistent fashion. Appellant's App. p. 70. Yet, the trial court concluded that primary physical custody would be automatically modified if Mother failed to establish her residence in Indiana by March 31, 2013. Consequently, the trial court's order violates Indiana Code section 31-14-13-6[.] *See Bojrab*, 810 N.E.2d at 1012.

*In re Paternity of C.J.A.*, 3 N.E.3d at 1031-32.

[23] Father claims that a prospective modification of custody no longer exists in the present case because the trial court's final order of January 21, 2015, provides

that Mother shall have primary physical custody of C.A. and Father have liberal parenting time "as set forth in the January 7, 2012 order." Appellant's App. p. 81. Further, the final order explicitly "incorporate[d], by reference, all findings, legal conclusions, and decrees of its January 7, 2012 Order and render[ed] the same as final with Mother having returned to Tippecanoe County under the provisions of said Order."

[24] Thus, we construe the final order as incorporating the provision of the January 7 order that if Mother did not return to Indiana, an automatic prospective change of custody would occur. Although Mother admits that she has in fact returned to Indiana, this does still not render the issue moot, as Mother cannot return to South Carolina without risking the automatic loss of her current custody of C.A.

[25] We therefore reverse the trial court's order as to this improper prospective modification of custody and remand with instructions that the trial court enter an order on child custody without this provision.[2]

## Conclusion

[26] The trial court's findings are supported by the evidence and not clearly erroneous. The trial court's reliance on the relocation statutes was improper as the parties had previously agreed that Mother would move to South Carolina

---

[2] We express no opinion regarding any future custody determination should Mother decide to relocate to South Carolina. This will have to be decided by the trial court based upon the then-existing facts and circumstances when and if such a desire or need to relocate should arise.

and she and C.A. had resided there for the past two years. That part of the trial court's order providing for an automatic prospective change in custody was improper. The trial court's order is reversed with regard to this prospective change in custody provision.

[27] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Kirsch, J., and Brown, J., concur.